RELFE, *Superintendent of the Insurance Department*, v. THE COLUMBIA LIFE INSURANCE COMPANY, *Appellant*.

**Life Insurance:** DISSOLVED COMPANIES: NO PRIORITY OF DEATH CLAIM'S OVER RUNNING POLICIES. In the absence of any statute to the con-trary, claims against a dissolved stock life insurance company found-ed upon death losses which accrued prior to the date of dissolution are not entitled to priority of payment over claims founded upon policies which were running at that date.

The act of April 21st, 1877, (Sess. Acts 1877, p. 275,) is in harmony with the rule of equality of distribution.

But section 6047, Revised Statutes 1879, establishes a priority in favor of the death claimants.

This section, however, is not operative in the case of a company dissolved before it became a law. To make it operative would be to alter rights fixed by the dissolution.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Geo. D. Reynolds* and *Wm. S. Relfe* for appellant.

1. On general principles of equity it would seem that a loss which had accrued before the company was dissolved,

and was entitled to full payment, even if the company in paying it exhausted all its assets, should have priority in the distribution, especially when it has been merged into a judgment, and, in the absence of a statute, was, at common law, entitled to priority as a debt of higher dignity than simple contract debts. Toller Execs., 258; *Woodworth v. Paine*, 1 Ill. (Breese) 294; *Paschall v. Hailman*, 9 Ill. 285; 2 Williams Execs., (6 Am. Ed.) p. 1065, § 2, chap.

But as our law, especially by sections 6032 and 6047, reserves the priority of judgments founded on death claims, considerations of the equities are not properly adressed to the court. *Wilson v. Wilson*, 1 Cranch C. C. 255; o. Ct. of St. Louis v. Griswold, 58 Mo. 175.

2. Assuming that the provisions of the law of 1879 pply to companies dissolved and in course of administraon when the law was passed, the priorities given by it are not invalid as contrary to article 1, section 10, Constitution United States, or article 2, section 15, constitution of Missouri. (*a*) The order in which claims are to be paid is not a question affecting the contract, but relates solely to the remedy. *Union Bank v. Smith*, 4 Cranch C. C. 37; *Com. v. Lewis*, 6 Binney 271; *Morse v. Goold*, 11 N. Y. 286; *Harrison v. Sterry*, 5 Cranch 289. (*b*) In the distribution of personalty the law of domicile determines the parties to the distribution; but the law of the forum in which the estate is being distributed, in force at the time of distribution, governs the order of classification and payment of demands. Story Conflict Laws, (6 Ed.) §§ 524, 525; *Ennis v. Smith*, 14 How. 424; *Harrison v. Sterry, supra*. Nor can parties contract away the right of the State to alter and repeal such laws. Cooley Const. Lim., (3 Ed.) §§ 287, 288, 289; *Conkey v. Hart*, 14 N. Y. 30; *Youngblood v. Norton*, 1 Strobh. (S. C.) Eq. 122; 2 Williams Execs., (6 Am. Ed.) p. 1058. (*c*) It has never been held that rules of distribution conferred vested rights prior to an actual order of distribution. A vested right has been defined to be an " immediate fixed right of present or future enjoyment."

Fearne Cont. Rem., 1. "An estate is vested when there i an immediate right of present enjoyment, or a presen fixed right of future enjoyment." 4 Kent (*) 202. Eve judgments have been deprived of their place in the classif cation of demands by changes of law made after thei rendition. Cooley Const. Lim., (3 Ed.) § 361, and note 4 *Swearingen v. Eberius*, 7 Mo. 421 ; *Prewitt v. Jewell*, 9 M. 723 ; *Miller v. Doan*, 19 Mo. 650. The right of the Sta to control them and settle priorities has never been su cessfully denied. *Harness v. Green*, 20 Mo. 316 ; *Gainey Sexton*, 29 Mo. 449 ; *McElmoyle v. Cohen*, 13 Pet. 312 ; *W son v. R. R. Co.*, 47 N. Y. 160 ; *Berry v. Marshall*, 1 Blac. (Ind.) 340 ; *Paschall v. Hailman*, 9 Ill. 300. Under laws descent and distribution, no vested right is conferred mere right is given to inherit, according to the law of t land in force when the distribution is to be made. *Marsh v. King*, 24 Miss. 85. Mechanics' liens, given by statu and under which work has been done, have been taken away. *Woodbury v. Grimes*, 1 Colo. 100. (*d*) To come within the prohibitions of the constitution of the United States, the law must be one which impairs the obligation of a contract. *Bennett v. Boggs*, 1 Baldwin 60 ; *Satterlee v. Matthewson*, 2 Pet. 413 ; *Watson v. Mercer*, 8 Pet. 108. (*e*) Being of the remedy, not of the contract, the priorities in order of payment may be altered, as between creditors, at the will of the legislature. *Sturges v. Crowninshield*, 4 Wheat. 122 ; *Bronson v. Kinzie*, 1 How. 311 ; *Tennessee v. Sneed*, 96 U. S. 69 ; *Penniman's case*, 103 U. S. 714 ; *Woodbury v. Grimes*, 1 Colo. 100. Nor do *Curran v. Arkansas*, 15 How. 304, and *Edwards v. Kearzey*, 96 U. S. 595, militate against this, for in these cases the effect was to take property from the reach of process of the creditor and give it to the debtor, at the expense of all the creditors. In the case at bar, it is a mere preference of one creditor over another, a right which has always been recognized as subsisting even in the debtor himself, *Johnson v. Mc-*

*Allister*, 30 Mo. 327 ; *Clarke v. White*, 12 Pet. 200 ; *Tompkins v. Wheeler*, 16 Pet. 118.

*McKeighan & Jones* for Fannie Adelman, a death claimant.

If the position of counsel on the other side were granted, that at the date of the dissolution by the decree each holder of a running policy had an equitable and vested interest in the assets of the company to the extent of the value of his policy, still the owner of the death-loss claim has a superior interest, because he has not only the same equities in the assets of the company, but he has a ripened legal demand, which matured before the demand of the living policy-holder, and which in equity was a lien on the trust funds in the hands of the officers of the company. *Qui prior est tempore, potior est jure.* It follows from the well established doctrine of the decisions relative to life insurance, that corporations of this class hold their property in trust for the payment of death losses, for they have received the premiums for that purpose. The policy-holders of such a company stand nearer to its property than the creditors of any other class of corporations. When a policy-holder dies, it is the duty of the company to set apart a sufficient portion of money to pay the loss according to the terms of the contract. Equity will regard that as done which should have been done, and if not done will place the party in the same position as though it had been done, and not in a worse. So long as the company had any property it was its duty until a receiver was appointed to use it in paying its death losses, although it had taken every dollar and left nothing for living policy-holders. The same duty is also to be discharged by the court to the extent of funds in its hands. Insolvency was no defense to the claim of payment either at law or in equity, and payment of such claims could only be suspended, not stopped, by an injunction and dissolution under the statute.

It was the duty of the directors to apply the funds of the company in payment of death claims as they accrued. The position of the receiver makes a breach of duty on the part of a trustee in the use of funds in its hands, placed there for that purpose, the occasion, if not the.reason, for placing the beneficiary of the trust in a worse position than if the trustee had discharged its duty. *Vanatta v. Ins. Co.*, 31 N. J. Eq. 15; *Mayer v. Att'y Gen.*, 32 N. J. Eq. 815; *Comm. v. Ins. Co.*, 112 Mass. 116; *Comm. v. Ins Co.*, 119 Mass. 45.

The ground of the insurance law of this State is, that when it appears in the mode prescribed that an insurance company has not enough funds in its possession to pay its simple contract debt, death losses, and keep intact its reserve for running policies, it shall be restrained from further doing business and be wound up. But this is to save living policy-holders from still greater impairment of the reserve part of the trust estate, and not to change the situation or present rights of those who have become entitled to be paid. in full. The whole law is in the nature of a police regulation to protect policy-holders against dishonest or reckless management of life insurance companies whenever found to exist, but was not intended to divert any portion of the funds from their proper and legitimate disposition, the payment of the death losses as they matured. It was not the intention of the law to better the condition of the living policy-holders by distributing to them a portion of that which was wrongfully retained by the company from death-loss claimants, and thus make itself the special champion of the living against the dead.

*W. L. Scott* and *E. B. Sherzer* for Lydia A. King, a death claimant.

The payment of death losses is the paramount obligation of the company; and each policy-holder must be considered as so recognizing it, inasmuch as his own rights

are dependent upon it. His own life may be the next one to fall in. As contrasted with the mere equity to the "reserve," or value of his running policy on the dissolution of the company, resting, as it does upon the happening of a possible future event, he must be considered as recognizing its subordination to this higher right, which is of the very essence of life insurance. From the very nature of the contract, and of the co-relations growing out of it, therefore, every policy-holder is committed to the recognition of the paramount obligation to pay death claims first out of the funds of the company; for every policy-holder has himself contributed to the assets of the company for the very purpose of securing the payment of these claims. Payment of death losses is the end and object of life insurance. This is what life insurance companies are organized for. This is the very substance of the contracts entered into. Every one who takes out a policy has this as the ultimate, indeed the sole object. There is no other performance stipulated for on the part of the company, or within the contemplation of the parties. *Comm. v. Ins. Co.*, 112 Mass. 116.

*John D. Pope* for respondent.

1. It has been uniformly decided that, without a statute, there is no priority. *Wilson's case*, L. R.. 9 Eq. Cas. 711, 720; *People v. Security Life Ins. Co.*, 78 N. Y. 116, 128; s. c., 34 Am. Rep. 522. The case of *Mayer v. Attorney General*, 32 N. J. Eq. 815, "is not in point, as that was a mutual company, in the charter of which the holders of running policies were liable to assessment to pay death losses." 78 N. Y. 129. That there should be no priority is manifest, because, (*a*) Running policies are contracts of the company issuing them, and every breach of contract gives a right of action. (*b*) The contract evidenced by a life insurance policy is broken by any act which repudiates its obligation, such as a refusal to receive the premiums

required to keep it alive—*McKee v. Ins. Co.*, 28 Mo. 383; *Smith v. Ins. Co.*, 64 Mo. 330; *Fischer v. Ins. Co.*, 69 N. Y. 161—or by insolvency or dissolution of the company, which renders the payment or receipt of premiums impossible, and at the same time violates the contract, which is implied in every insurance policy, to keep on hand a reserve such as the law deems sufficient for the protection of the risk. *People v. Ins. Co.*, 78 N. Y. 124, 125; *Relfe v. Ins. Co.*, 10 Mo. App. 393; *Smith v. Ins. Co.*, 2 Tenn. Ch. 727. (c) But a life policy has a special and peculiar value, because it is the duty of the company to put aside or invest and reserve against the day when the policy will mature, a portion of the premiums paid in by the policy-holder; and this reserve " belongs in one sense to the insured who has paid" the premiums which produced it. *N. Y. Life Ins. Co. v. Statham*, 93 U. S. 34, 35. It not only has a certain determinate value, which is declared to be a liability of the company, (R. S., §§ 5966, 5968,) but if sufficient assets to meet it when payable are not at all times kept on hand, the company has no right to exist, and is at once to be dissolved and its affairs wound up. *Relfe v. Ins. Co.*, 5 Mo. App. 173; R. S., § 6037. (d) In the distribution of an estate amongst creditors there is not, and never has been, any difference recognized or allowed between debts due and debts not due. In the absence of liens, legal or equitable, existing upon the assets when taken in hand for administration, all debts must be paid alike. *Bosler v. Exchange Bank*, 4 Pa. St. 33, 34; *Richards v. Ins. Co*, 43 N. H. 263; *People v. Life Ins. Co.*, 78 N. Y. 129; Story's Eq., § 554. (e) But the right of all creditors to *pro rata* payment is, if possible, stronger in the case of an insolvent corporation than anywhere else. The assets of such a corporation constitute a trust fund for creditors. *Curran v. Arkansas*, 15 How. 304; *Sanger v. Upton*, 91 U. S. 60; Story's Eq., § 1252. "An insolvent corporation which has ceased to carry on business, cannot distribute its assets unequally, and prefer certain creditors at the expense of others. The

equitable lien of creditors upon the corporate assets, is for the benefit of all. the creditors equally." Morawetz on Corp., § 581; *Sawyer v. Hoag*, 17 Wall. 610, 622, 623; *Marr v. Bank*, 4 Coldw. 471, 484, 485, 486. (*f*) There is no equity in favor of death losses. The equity, if any, is on the other side. The holder of a running policy has contributed as much to the general assets as if he had died before the dissolution of the company. The accident of the death of one of many policy-holders has already operated to swell the amount of his claim to the face of his policy, and this, even on a *pro rata* division, will cause the death claim to receive an undue proportion of the assets.

2. The act of 1879 was not intended to change the rights of creditors as respects the assets of companies already dissolved and partially administered, because—
(*a*) The language of the act negatives such an intention. Section 6047 gives priority only as to " the assets of such dissolved company"—meaning as the context shows, a company dissolved under the act of 1879. (*b*) The subsequent section (6053) refers only to the mode and manner of proceeding—to the form of the remedy, rather than to the substantial rights of creditors—to the sale of the assets, the manner of auditing and reporting claims, the taxing of costs and expenses—and such things, wherein there is free scope for the act. (*c*) This construction not only conforms to the natural meaning of the language used, but is the only one permissible under the rules that, statutes are not to be given a retrospective operation, and statutes in derogation of common right are to be strictly construed. *Lehigh Coal & Nav. Co. v. C. R. R. Co.*, 29 N. J. Eq. 255.

3. Applied to this case the act of 1879 would be unconstitutional. Statutes postponing the time for the payment of a debt are void. *Green v. Biddle*, 8 Wheat. 84; *Jacobs v. Smallwood*, 63 N. C. 112; *Edwards v. Kearzey*, 96 U. S. 601; *Bumgardner v. Circuit Court*, 4 Mo. 50. So is a statute fixing a different rule for the computation of the amount of damages for breach of a contract. *Relfe v. Ins.*

*Co.*, 10 Mo. App. 398. So is a statute which diminishes the selling value of a debtor's property by giving him time for its redemption after sale. *Bronson v. Kinzie*, 1 How. 311; *Howard v. Bugbee*, 24 How. 461. And so is a statute which enlarges the previous exemptions from seizure and sale under execution. *Gunn v. Barry*, 15 Wall. 610; *Edwards v. Kearzey*, 96 U. S. 595. And, of course, a statute denying a particular creditor any and all remedy is void. *Von Hoffman v. City of Quincy*, 4 Wall. 552; *White v. Hart*, 13 Wall. 647. The act of 1879, if construed so as to take away from the largest class of creditors all right to participate in the distribution of the assets, is worse than a stay law, because it postpones payment for all time; it is worse than a reduction of the amount of the debt, for it practically reduces it to nothing; it is worse than a mere diminution of the value of the property to which the creditor had a right to look for payment, for it makes the property valueless to him; it is worse than the exemption of a portion of the debtor's property, for it exempts it all; and it is as bad as a total denial of any and all remedy, for while it admits the debt is due, it provides that nothing shall ever be paid on it.

HOUGH, C. J.—The sole question in this case is, whether claims founded upon death losses which accrued prior to the dissolution of the Columbia Life Insurance Company, on October 17th, 1877, are entitled to priority of payment over claims founded upon the surrender values of running policies, *i. e.*, policies which were in force and had not matured prior to the date of dissolution, which became debts of the company to the extent of such surrender values, by reason of such dissolution. The circuit court decided that the death losses were not entitled to priority of payment, and the judgment was affirmed *pro forma* by the court of appeals.

By the act of April 21st, 1877, (Sess. Acts 1877, p. 275,) the surrender values of running policies are recog-

nized to be liabilities of the company, and it is further provided, that whenever it shall appear that the assets of the company do not exceed its liabilities, exclusive of paid capital, its further continuance in business is to be regarded as hazardous to the public, and the Superintendent of Insurance is required to take steps to restrain it from doing further business, and to have its affairs wound up. As the surrender values of running policies are, in contemplation of the statute, liabilities of the company, which it must always have on hand sufficient assets to meet, when such liabilities become debts of the company, by reason of the dissolution, they stand upon the same footing as all other debts, and in the absence of any statute giving priority of payment to the death claimants, or creating some legal or equitable lien upon the assets of the company, we do not see why such death claimants should be decreed to be entitled to a preference in the distribution of the assets of such dissolved corporation.

Nor is there anything in the nature of the contract of life insurance with a stock company, such as the Columbia Life, which could be held to create an equitable right to priority on the part of the death claimant. The premiums paid by the insured are, according to the theory upon which the business of life insurance is conducted, paid primarily for his own benefit, and it is the duty of the company to set apart and invest a portion of such premiums as a reserve fund to be applied to the payment of his policy whenever the same shall become a debt of the company. This reserve, taken from the premiums, as was said in the case of *New York Life Ins. Co. v. Statham*, 93 U. S. 34, belongs, in one sense, to the insured who has paid them (the premiums), somewhat as a deposit in a savings bank is said to belong to the person who made the deposit. No portion of the premium paid by any one policy-holder, can properly be said to have been paid for the benefit of the death claimant under any other policy ; for, if each policy-holder should fulfill that expectancy of life upon which the

amount of his premium is calculated and fixed, the reserve arising from the premiums paid upon such policy, would be sufficient to meet such policy when due. Nor can the fact that the death of any one policy-holder operates to enlarge the surrender value of his policy to the face value thereof, give any additional sanctity to the claim or create any superior equity in behalf of the claimant thereunder. The death loss is but a debt at last, and in reason, and on principle, stands on no better footing than debts due by the company to living policy-holders; and when the assets are insufficient to pay all, in full, they must be ratably divided. The views here presented are supported by *Wilson's case*, L. R., 9 Eq. Cas. 711, 720, and the *People v. Security Life Ins. Co.,* 78 N. Y. 116; *s. c.,* 34 Am. Rep. 522, the only two cases which the research of counsel has brought to our attention upon the precise point involved in this case.

The decision in *Mayer v. Attorney General,* 32 N. J. Eq. 815, which sustained the claim of priority for matured policies, proceeded upon the ground that the company in that case was a mutual company constituted by policy-holders, in distinction from a stock company constituted by stockholders, and it was held that under the charter of that company, the holders of matured claims were the creditors, and the holders of the running policies, the members of the debtor corporation. No such relation can be created by death, or be otherwise made to exist, between the policy-holders of a stock company. When the corporation is dissolved all the policy-holders are creditors of the company, and are, therefore, entitled to share ratably with death claimants in the assets of the company.

In 1879 the insurance law was amended by the addition of a new section, (§ 6047, R. S.,) giving priority to death losses and matured policy claims, and the following further provision was made in section 6053: "In the settlement of the affairs of insurance companies already dissolved and in the hands of the court by its receivers, the

court shall, as far as possible, conform to and be governed by the provisions of this law." This provision, it is contended, requires distribution to be made in the case before us, according to the terms of section 6047, *supra*. It is a matter of grave doubt whether it was the purpose of the legislature to do more, by this provision, than to require the courts to conform to the law of 1879, so far as the form and manner of proceeding, in such cases, is concerned. But, if it was the purpose of the act so to distribute the assets of companies already dissolved, as that the great mass of creditors of such dissolved companies, whose right to a ratable proportion of the assets of such companies had already become fixed and determined by the dissolution of the same, should be deprived of such right, then, we are of opinion that such enactment is without constitutional authority, and is void. It is unnecessary to enter at large upon the discussion of this point, or to cite authorities in support of our view. It is sufficient to say that the right of the policy-holder grows out of a breach of contract, and the legislature has no power to take it away.

We are all of opinion that the judgment of the court of appeals should be affirmed.