SPEAR v. KEYSTONE LANTERN CO. et al.

(Circuit Court, E. D. Pennsylvania. August 27, 1904.)

No. 20.

1. PATENTS—INFRINGEMENT—LANTERNS.
    The Spear patent, No. 413,464, for an improvement in lanterns, the object of which is to make a stronger union between the oil pot and the guard frame, was not anticipated, shows invention, and the invention was not abandoned by the taking out of patent No. 399,944, by the same inventor. Claims 1 and 2 also *held* infringed.

2. SAME—VALIDITY—PRIOR PATENT FOR ELEMENT OF COMBINATION.
    A prior patent for a device does not defeat a patent for a combination of which such device forms one of the elements.

In Equity. Suit for infringement of letters patent No. 413,464 for a lantern, granted to Furman D. Spear October 22, 1899. On final hearing.

Arthur M. Pierce, James H. Raymond, Otto R. Barnett, and Hector T. Fenton, for complainant.

Chas. B. Collier, for Keystone Lantern Co.

Frederick G. Dussoulas, for John T. Casey.

HOLLAND, District Judge. The complainant, to whom patent No. 413,464 was granted on October 22, 1899, for a new and useful improvement in lanterns, brings this suit, and alleges that claims 1 and 2 of said patent have been infringed by the defendants. The defense is: (1) Noninfringement; (2) lack of invention in the subject-matter of the patent; (3) that the patent has been anticipated; (4) that the patent was abandoned, or his right to a patent lost, by reason of prior issue of a patent to the complainant No. 399,944.

The patent No. 413,464 is for an improvement in lanterns, and the object to be attained, as set forth in the description, "is to provide a simple, cheap, durable, and easily applicable means of uniting the oil pot and chimney or globe with the guard frame, the union being such as to increase the strength and rigidity of the structure at or in the region of the union, so that it will effectually withstand any damaging force or strain to which it is likely to be subjected." To secure this advantage in lanterns, the complainant claims to have invented a new and useful method of uniting the body hoop with the frame of the lantern in such a way that the hoop is not only securely held in place against any possibility of disarrangement, but so that the form of joint adds to the strength and stiffness of the structure in the region of the frame always most liable to damage. Heretofore

¶ 2. See Patents, vol. 38, Cent. Dig. § 8.

lanterns were made by joining the body hoop to the frame of the lantern, either by hooking the upright guards to a top flange, which was secured to the top of the body hoop, or the upright guards were extended down and joined to the body hoop by various devices; but in no other prior construction of a lantern do I find the employment of a body hoop frame ring to which the upright guards are attached, and which entirely encircles the body hoop, as in the complainant's lantern. In other words, the complainant is the first to have used a body hoop frame ring which embraces the body hoop at its center, and rigidly secured to the body hoop frame ring by being buckled over the inside edge of the body hoop frame ring. This gives the entire structure strength, stiffness, and rigidity at the point where it is necessary in order that the oil pot and the light may be secure against damage. The body of the lantern is composed of a series of upright wide and thin steel bars arranged radially to the axial line of the lantern and united together and held in proper relative position with regard to each other and to the other members of the lantern body by horizontal spacing rings called "guard rings." These guard rings are also wide and thin annular steel rings united to the upright wide and thin bars by notching and interlocking them together. The lower frame ring is what is called in the patent in suit "the horizontal body hoop frame ring," which is notched and interlocked with the upright guards. The body hoop consists of a vertically set sheet-metal cylinder, and is secured in the horizontal body hoop frame ring at a point intermediate of its ends by being buckled under and over the inner margin of the body hoop frame ring, and afterwards dipped or tinned; the patentee claiming that the form of joint adds to the strength and stiffness of the structure in the region of the frame always most liable to damage.

The first and second claims in the specification are as follows:

"(1) In a lantern, the combination, with the horizontal frame ring, B³, secured to the upright guards, substantially as explained (that is to say, by internotching them, and thus interlocking them together), of a body hoop secured upon said frame ring, substantially as and for the purposes set forth.

"(2) In a lantern, the combination, with the flat metal horizontal frame ring notched upon and secured to the upright guards, of the body hoop bent or buckled upon said flat metal ring, substantially as shown and described."

The defendants' lantern, which complainant alleges infringes his patent, is correctly described by Edward Wilhelm, the expert called by complainant, and is as follows:

"Defendants' lantern is of the same general type as that of the Spear patent in suit, and contains a lantern frame which is composed of upright guard members, horizontal guard rings, and a body hoop. the guard rings being rigidly secured to the upright guard members, and body hoop being rigidly secured to that horizontal guard ring, which connects the inwardly turned portions of the upright guard members, the body hoop frame ring; and the lower ends of the upright guard members are notched and interlocked so as to connect these parts rigidly, and the body hoop frame ring is seated in an annular depression or recess formed in the outer side of the body hoop (which corresponds to the buckling in the complainant's lantern), so that the latter is rigidly secured to this ring. The lantern then appears to be dipped for securing these members of the guard frame together and giving them a finish. The upright guard members are made of flat metal which is the preferred form specified in the Spear patent, and the body hoop frame ring, to which the lower

ends of the guard are secured, is also flat in its outer portion with which the lower ends of the guard members are interlocked. The body hoop frame ring is turned up on its inner side, inside of the lower ends of the upright guard members, so as to form a short, annular, upright flange or collar, which surrounds the body hoop in the external annular depression formed in the latter. In this respect the body hoop frame ring of the defendants' lantern differs from that shown in the Spear patent in suit, in which that ring is flat from the outer to the inner edge. In the defendants' lantern the ring therefore takes a somewhat wider bearing on the body hoop."

I am unable to see any difference between the use of the body hoop frame ring in the complainant's lantern and the wider body hoop frame ring in the defendants' lantern, other than that stated in the last part of the witness' description, to wit, that one ring has a wider bearing upon the body hoop than the other; but the one used by the defendants is the equivalent of that used by the complainant. There are two other variations in the frame ring, to wit, a narrowing of the frame ring between the points where the upright guards join it, and by extending the upright guards beyond the body hoop frame ring and bending them in through the body hoop and turning their ends up on the inner side. These variations from the complainant's structure are plainly of no substance, and embody no new invention. It is evident that the first and second claims of the complainant's patent are infringed, unless the patent is void for any of the reasons set forth in the defense.

As to the question of invention in the complainant's patent, it is evident that he has made an important improvement, which has not been anticipated by the various patents to which the court's attention has been called. No other lantern shows the simple and desirable connection of the body hoop with the frame that is shown in complainant's lantern. It is true, the improvement, after the discovery, seems slight; but it had never been known or used before, and lanterns previously made were not as rigid and stiff at this juncture. It is not necessary to separately consider the great number of patents for lanterns introduced, as the drawings and exhibits all show that this particular method of joining the parts had never been described or used in either; nor do we think that the patent has been abandoned by the complainant, or his right to a patent lost, by reason of the issuance of patent No. 399,944. That patent was for the frame of a lantern, and describes the kind of material to be used in the frame and the method of notching and interlocking the parts together; the lower horizontal guard ring of which is described in the patent in suit as the body hoop frame ring. The thing patented by the complainant was the method of securing the body hoop to a frame ring, which was part of the frame of a lantern, rigidly and securely, which had never theretofore been known; and the fact that this body hoop frame ring is part of the frame of the lantern described in the prior patent to himself is not an abandonment. A prior patent for a device does not defeat a patent for a combination of which such device forms one of its elements. McMillan v. Rees (C. C.) 1 Fed. 722; Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68 (see page 74).

Let a decree be drawn in favor of the complainant.