## BATES *v.* COE.

1. Persons sued as infringers may, if they comply with the statutory condition as to notice, give the special defences mentioned in the Patent Act in evidence, under the general issue.

2. Such notices, in a suit in equity, may be given in the answer; and the provision is, that if any one of those defences is proved, the judgment or decree shall be in favor of the defending party, with costs.

3. Defences of the kind, where the invention consists in a combination of old elements, incapable of division or separate use, must be addressed to the entire invention, and not merely to separate parts of the thing patented.

4. Pursuant to that rule, the respondents alleged in their answer four of the statutory defences, besides the denial of infringement: 1. That the complainant is not the original and first inventor of the improvement. 2. That the alleged improvement is fully described in the several patents, printed publications, and rejected applications for patents, set forth in the answer. 3. That the improvement secured by the reissued patent is not for the same invention as the original. 4. That the improvement had been in public use

and was known to the several persons named in the answer before the complainant made his application for a patent.

5. All of these defences were overruled in the Circuit Court; and the respondents appealed to the Supreme Court, where the decision is that the first two defences are not proved, the court being of the opinion that the evidence introduced for the purpose was not sufficient to overcome the *prima facie* presumption which the patent affords in favor of the complainant.

6. Two points were ruled in response to the third defence: 1. That the complainant is not obliged in such a case to introduce the original patent in evidence. 2. That the respondent cannot have the benefit of such a defence, if the original patent is not exhibited in the record.

7. Improvements were made by the complainant in drilling and bolt-tapping machines, called in the specification a new and improved drilling and screw-cutting machine. Annexed to the specifications are the four claims of the patent, as set forth in the opinion of the court.

8. Inventors may, if they can, keep their inventions secret, and, if they do, no neglect to petition for a patent will forfeit their right to apply to the commissioner for that purpose. Mere delay is not a good defence, but the respondent, in a suit for infringement, if he gives the required notice, may allege and prove that the invention embodied in the patent in suit had been in public use or on sale more than two years prior to the complainant's application for a patent; and if he alleges and proves that defence, he is entitled to prevail in the suit. Those requirements constitute conditions to the sufficiency of the defence; and the court held that the respondents had not complied with either to any effectual extent.

9. Infringement being denied in the answer, the burden of proof is upon the complainant; and the court decided that the charge in this case was fully proved.

10. Besides these defences, the assignment of errors presented two others, not set up in the answer: 1. That the Circuit Court erred in holding that the patentee was the original and first inventor of the improvement specified in the second claim. 2. That the Circuit Court erred in holding that the patentee was the original and first inventor of the improvement specified in the fourth claim of the patent. Both of those claims refer to parts of the drilling feature of the improvement, which is merely a combination of old elements; and the court overruled the defences, for two reasons: 1. Because they were not set up in the answer. 2. Because they were addressed to a part only of an indivisible improvement, and not to the entire invention, as required by the act of Congress.[1]

APPEAL from the Circuit Court of the United States for the Southern District of Ohio.

The facts are stated in the opinion of the court.

*Mr. James Moore* for the appellant.

*Mr. E. E. Wood, contra.*

---

[1] These head-notes were prepared by Mr. Justice Clifford, for the "Patent Office Official Gazette," and are with his permission here inserted.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Persons sued as infringers in a suit in equity, if they give the required notice in their answer, may prove at the final hearing the same special matters in defence to the charge of infringement as those which the defendant, in an action at law, may set up under like conditions.

Defences of the kind which it is important to notice in the present case are the following: 1. That the patentee is not the original and first inventor of any material and substantial part of the thing patented. 2. That the improvement had been patented or described in some printed publication prior to the supposed invention. 3. That it had been in public use or on sale in this country for more than two years before his application for a patent, or had been abandoned to the public.

Notices of the kind, when the suit is in equity, may be given in the answer or amended answer; and if the defence is previous invention, knowledge, or use of the thing patented, the respondent must state in the notice the names of the patentees, and the dates of their patents and when granted, and the names and residences of the persons alleged to have invented or to have had the prior knowledge of the thing patented, and where and by whom it had been used. Each of these defences, it will be seen, goes to the entire invention, and not to separate parts of the thing patented; and the provision is, that if any one or more of the special matters alleged shall be found for the defending party, the judgment or decree shall be rendered in his favor, with costs. Rev. Stat. (2d ed.), sect. 4920.

Evidence to sustain the second defence is sufficient if the patent introduced for the purpose, whether foreign or domestic, was duly issued or the complete description of the invention was published in some printed publication prior to the patented invention in suit; and the patent offered in evidence or the printed publication will be held to be prior, if it is of prior date to the patent in suit, unless the patent in suit is accompanied by the application for the same, or unless the complainant introduces parol proof to show that his invention was actually made prior to the date of the patent, or prior to the time the application was filed.

Neither the defendant in an action at law nor a respondent

in an equity suit can be permitted to prove that the invention described in the prior patent, or the invention described in the printed publication, was made prior to the date of such patent or printed publication, for the reason that the patent or publication can only have the effect, as evidence that is given to the same by the act of Congress. Unlike that, the presumption in respect to the invention described in the patent in suit, if it is accompanied by the application for the same, is that it was made at the time the application was filed; and the complainant or plaintiff may, if he can, introduce proof to show that it was made at a much earlier date.

Improvements, it seems, were made by the complainant in drilling and bolt-tapping machines, called in the introductory part of the specification a new and improved drilling and screw-cutting machine, for which he, on the 20th of January, 1863, received letters-patent in due form; and the record shows that on the 19th of February, four years later, he surrendered the same, and that a new patent, being the reissued patent in suit, was granted to him for the same invention.

Special reference is made in the specification to the figures given in the drawings for a description of the invention, and they show, beyond doubt, what the specification alleges, that the invention relates to a novel and improved arrangement of the parts of a machine constructed and designed for the purpose of drilling and cutting screws; nor is it doubted that the allegation of the patentee is true, that it affords to the operator engaged in cutting screws considerable advantages beyond what he would obtain by the use of the ordinary hand-machine.

Inventors, before they can receive a patent, are required to file in the Patent Office a written description of their invention, and of the manner and process of making and using the same, in such full, clear, concise, and exact terms as to enable any person skilled in the art to make, construct, and use the same.

Pursuant to that requirement, the patentee gave a particular and full description of all the operative devices of the machine, even to the minutest, and of the function performed by each, and of the mode of operation of the whole when the machine is put in motion, including the devices employed when the machine is operated by steam. The devices may be divided

into two classes: 1. Those employed to do the work. 2. Those employed to operate the machine, whether by steam or by hand.

Constituted, as the machine is, of numerous devices operating as a whole, it is scarcely possible to define its operations without first taking into the account its separate parts. Of course it has a frame secured to some appropriate fixture, which constitutes, directly or indirectly, the support of all the parts of the machine. Operated, as the machine is, by power, which may be either steam or hand power, it follows almost necessarily that it has a shaft, which in this machine is fitted horizontally in the upper part of the frame, with a fly-wheel at one end and a bevel-pinion at the other, which latter device gears into the bevel-wheel shown in the drawings, the shaft of which is fitted in suitable bearings on the upper part of the frame and at right angles with the main shaft, as shown in the second figure of the drawings, the outer end of the last-named shaft being provided with a crank.

Besides the pinion already mentioned, there is another, called a bevel-pinion, which also gears into the same wheel, the statement being that it is fitted loosely on the shaft of the wheel in such a manner that the shaft may rise and fall independently of the wheel, and the latter be made at the same time to rotate the shaft, which is tubular at its lower end, and is provided with a set-screw, by which a drill or screw-cutting die may be secured in it.

In addition to that, there is a vertical screw, which works in a nut on the upper part of the frame, the lower end of the screw being connected by a swivel-joint with the upper end of the tubular shaft. On the screw above the nut there is placed a ratchet, fitted on the screw in such a manner that when turned it turns the screw, and at the same time admits the latter to rise and fall under the action of the nut.

Speaking of the ratchet, the patentee states that it is turned by means of a pawl which is connected by a pivot to the arm, the latter being attached to the frame of the machine by a pivot. Connected with the arm is a spring, which has a tendency to keep the outer or free end of the pawl in contact with the face of the wheel, which is of such a shape as to form a cam

and operate the pawl, so that the latter will turn the ratchet and cause the ratchet as it rotates to turn the screw, the ratchet causing the same to descend as it is turned, so that the tubular shaft will be forced down and the drill fed to its work.

Such is the described mode of operation of the working devices when the motive power is steam; but the patentee states that it is easy to throw the pawl back so that it can no longer be operated by the cam, in which event the drill must be fed to its work by hand, which is done by turning the screw by means of the handle attached to the wheel on top of the screw.

Next follows the description of that feature of the machine which may be denominated the screw-cutting apparatus. Brief as the description is, it is obviously sufficient to justify the patentee in his claim that it is both new and useful. He commences by stating that the base of the frame has an oblong opening made through it vertically to receive the shanks of the jaws constituting the vice, one of which has the ends of the yoke, so called, bolted to it. Two screws are also described, one of which passes through the semicircular end of the yoke, and the other passes into the jaws of the vice. These jaws are for the purpose of clamping or holding the rods on which screws are to be cut. Such rods are clamped firmly between the jaws by turning the screw that passes through them which constitutes the vice, the screw-cutting die being screwed in the lower end of the tubular shaft, and the pawl being disengaged from the ratchet. No feed movement is required in the operation, as the jaws and rod rise and fall under the action of the die, the shanks of the jaws serving as guides. When more speed is required for either drilling or screw-cutting than can be obtained by turning the bevel-wheel, it is accomplished by applying additional power to the main shaft, which shows that the machine is adapted to both heavy and light work.

Service was made; and the respondents appeared and filed an answer setting up several defences, as follows: 1. That the complainant is not the original and first inventor of the alleged improvement. 2. That the alleged improvement, in all its parts, was fully described in the several patents, printed publications, and rejected applications for patents set forth in the

answer, prior to the alleged invention thereof by the complainant.     3. That the improvement secured by the reissued patent is not for the same invention as that embodied in the original patent.     4. That the alleged improvement was in public use and was known to divers persons in the United States prior to the alleged invention thereof by the patentee, more particularly set forth in the amended answer subsequently filed by leave of court.     5. That the respondents have not infringed the alleged invention, and that if they have, the complainant has not suffered any damages by such infringement.

Proofs were taken, hearing had, and the court entered a decree in favor of the complainant, and sent the cause to a master to compute the gains and profits of the infringement made by the respondents.     Prompt report was made by the master, to which both parties excepted; but it is wholly unnecessary to notice the exceptions of the complainant, as he did not appeal; nor is it necessary to give much consideration to the exceptions filed by the respondents, as the assignment of errors varies materially from the exceptions taken to the master's report.

Both parties appeared, and were heard; and the court confirmed the report of the master as to the amount awarded, and entered a final decree that the complainant recover of the respondents the sum of $290 and costs; from which decree the respondents appealed to this court.

Since the appeal was entered here the respondents have filed the following assignment of errors: 1. That the Circuit Court erred in finding that the respondents had infringed the first claim of the reissued patent.     2. That the court erred in finding that the complainant was the original and first inventor of the improvement specified in the second claim of the patent. 3. That the court erred in finding that the respondents had infringed the second claim of the patent.     4. That the court erred in finding that the respondents had infringed the third claim of the patent.     5. That the court erred in finding that the complainant was the original and first inventor of the improvement specified in the fourth claim of the patent. 6. That the court erred in finding that the respondents had infringed the fourth claim of the patent.     7. That the court erred in adjudging that the reissued patent is a good and valid

patent. 8. That the court erred in confirming the fifth finding in the report of the master. 9. That the court erred in the construction given to the reissued patent.

Annexed to the specification are the claims of the patent, which are as follows: 1. The arrangement of the three bevel-wheels in such a manner that the tubular shaft may be revolved with more or less speed and power for the different purposes to which the machine may be adapted. 2. The automatic feed arrangement, consisting of the ratchet, pawl, spring, and cam, whereby the drill is fed to its work, the arrangement being so made that it can be detached and the drill fed by hand. 3. He also claims the vice for holding the rods for making screws, in combination with the machine, the vice consisting of the described jaws and the described screw arranged in the base of the frame. 4. Finally, he claims the combination of the tubular shaft and the described vertical screw with the pinion and nut, whereby the rotary motion and the necessary feed is given to the drill, as described in the specification.

Cases arise not unfrequently where the actual invention described in the specification is larger than the claims of the patent; and in such cases it is undoubtedly true that the patentees in a suit for infringement must be limited to what is specified in the claims annexed to the specification, but it is equally true that the claims of the patent, like other provisions in writing, must be reasonably construed, and in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims; nor is it incorrect to say that due reference may be had to the specifications, drawings, and claims of a patent, in order to ascertain its true legal construction. *Brooks et al.* v. *Fisk et al.*, 15 How. 215.

Apply that rule to the case, and it follows that there is no substantial variance between the claims of the patent and the description of the invention or inventions described in the specification.

In construing patents, it is the province of the court to determine what the subject-matter is upon the whole face of the

specification and the accompanying drawings.  Curtis, Patents (4th ed.), sect. 222.

In case of a claim for a combination, where all the elements of the invention are old, and where the invention consists entirely in the new combination of old elements or devices whereby a new and useful result is obtained, such combination is sufficiently described if the elements or devices of which it is composed are all named, and their mode of operation given, and the new and useful result to be accomplished pointed out, so that those skilled in the art and the public may know the extent and nature of the claims, and what the parts are which co-operate to produce the described new and useful result.  Curtis, Patents (4th ed.), sect. 289 *a*, p. 275; *Seymour* v. *Osborne*, 11 Wall. 542.

Accurate description of the invention is required by law, for several important purposes: 1. That the government may know what is granted, and what will become public property when the term of the monopoly expires.  2. That licensed persons desiring to practise the invention may know during the term how to make, construct, and use the invention.  3. That other inventors may know what part of the field of invention is unoccupied.  *Gill* v. *Wells*, 22 id. 27.

Sufficient has already been remarked to show that the invention in its primary feature is an improved machine for drilling, composed of the devices pointed out in the specification, which operate and perform the functions therein described, and which by their joint operation in the manner described accomplish the patented result; that the other feature of the invention is an improved vice constructed on the same frame, consisting of the several devices already described, and which operate in the manner described to accomplish the described result.

Construed in that way, as the specification should be, it is clear that the whole invention, including the drill and the vice, is sufficiently described both in the specification and in the claims of the patent, and that the objection of the respondents in that regard must be overruled.

Reissued letters-patent must be for the same invention as that secured in the original patent; and if it appears that such

a patent is for a different invention, it is clear that it is void, as no such power is vested in the commissioner; but no such defence can be sustained in this case, as the original patent was not introduced in evidence. Persons seeking redress for the infringement of a reissued patent are not obliged to introduce the surrendered patent; and if the old patent is not given in evidence by the party sued, he cannot have the benefit of such a defence. *Seymour* v. *Osborne*, 11 id. 546.

Power to grant patents is conferred upon the commissioner; and when that power has been duly exercised, it is of itself, when introduced in evidence in cases like the present, *prima facie* evidence that the patentee is the original and first inventor of that which is therein described as his invention. Proof may be introduced by the respondent to overcome that presumption; but in the absence of such proof, the *prima facie* presumption is sufficient to enable the party instituting the suit to recover for the alleged violation of his rights.

Availing himself of that rule of law, the complainant in this case introduced the reissued patents referred to in the bill of complaint, the effect of which is to cast the burden of proof upon the respondent to prove his first defence, — that the complainant is not the original and first inventor of the alleged improvement. Both parol and documentary evidence is admissible to establish that defence; and inasmuch as the same documentary evidence is sufficient to prove the second defence, the two defences will be considered together.

Throughout, it should be borne in mind that such defences are authorized by the act of Congress, and that they are required to be addressed to the invention as described in the specifications and claims of the patent. None of the elements or devices of the patented machine are new, and the invention itself consists in a combination of old devices. Such a combination is an entirety, though more than one combination may be included in the same patent. *Gill* v. *Wells*, 22 id. 2–24.

Where there is only one combination of an entire character, incapable of division or separate use, the defences of the kind mentioned must be addressed to the invention. Exact conformity to that rule was observed by the respondents in framing their answer in this case; and inasmuch as no parol evidence

of any considerable importance was introduced to support the first defence, the two under consideration are substantially identical in respect to the proofs introduced in their support. Exhibits in great numbers were introduced by the respondents to establish those defences, consisting of patents, printed publications, and rejected specifications, of which those regarded as most material will be separately examined.

Briefly described, the invention embodied in the reissued patent is a hand-drill and screw-cutter, designed for ordinary mechanical use, with five constituent or elementary parts: 1. The frame to support the operating mechanism, with a base for holding the material to be wrought or worked. 2. Bevel-gearing for driving a shaft or spindle propelled by manual power, capable of running at two speeds, and arranged so that the operator who turns the crank can properly adjust and attend to the material and cause the several parts of the machine to work harmoniously. 3. Automatic and hand-feeding devices, so arranged to the machine as to be easily controlled by the operator, to give vertical motion to the spindle when used for drilling. 4. A shaft or spindle for holding the tool for performing the work, constructed and arranged in the machine so that it may be fed automatically or by hand, or by both, and so connected by a pinion to the crank that it can receive rotary motion independent of its vertical feeding motion, by means of which it is enabled to act as a screw-cutter. 5. A vice attachment for holding rods when the machine or spindle is receiving rotary motion only and is cutting screws.

Screw-cutting requires the drill to be made vertical, so as to allow the vice to rise and fall under the action of the die, in which respect the invention differs from all other hand-drills described in the record. Owing to the peculiar construction of the machine, it is adapted to drilling, and may be converted into a screw-cutter by placing a vice in the opening of the base and detaching the feed devices. Arranged as it is, it may be propelled at two different speeds, so that it can have more or less power either to cut screws or drill holes, simply by changing the point where power is applied. When the greater power and less speed is required, the smaller gear

is used ; and when greater speed and less power is required, the larger gear is used as the driving-pinion, — the change being only in the use of pinions acting on the driving-gear.

Exhibit 1, introduced by the respondents, is a wooden model of a part of a planer. Unquestionably, it shows a cam, spring, ratchet, and pawl ; but they are not combined so as to give vertical or lateral motion to a revolving spindle, and as separate devices will perform no useful function. They are connected by a series of rods and levers, but they give simply an intermittent motion to the shaft. Instead of that, the device of the reissued patent employs in connection with the spindle a swivel-joint, nut, and screw, to give vertical as well as rotary motion to the shaft.

Devices in one machine may be called by the same name as those contained in another, and yet they may be quite unlike, in the sense of the patent law, in a case where those in one of the machines perform different functions from those in the other. In determining about similarities and differences, courts of justice are not governed merely by the names of things ; but they look at the machines and their devices in the light of what they do, or what office or function they perform, and how they perform it, and find that a thing is substantially the same as another, if it performs substantially the same function or office in substantially the same way to obtain substantially the same result ; and that devices are substantially different when they perform different duties in a substantially different way, or produce substantially a different result. *Cahoon* v. *Ring*, 1 Cliff. 620.

Reference will next be made to the patent of Amos Morgan, dated May 30, 1844, and called exhibit 3. It is what is called a horizontal machine, and is so arranged that all parts of the operative machinery, including the feeding devices and driving machinery, move forward on ways like the carriage of a mill. Unlike the invention of the reissued patent, it has but one speed for the spindle, which is imparted by two pinions. Two pinions are also employed to feed the spindle when the machine is to bore wood. When iron is to be drilled, two cams are employed, which are put through the driving-shaft, and made to slip out and in so as to adjust the apparatus to feed fast or

slow. Suffice it to say that the claim of the patent, without entering further into the descriptive portion of the specification, shows that the two inventions are unlike in most or all of their essential features. It is not in any aspect a vertical machine, and it is without any such base for a vice as that exhibited in the reissued patent of the complainant, and is not at all adapted to be used as a screw-cutter; nor is it arranged with two speeds, nor with a cam fixed on the pinion driving the spindle, so that the automatic feed will always correspond, as in the patent in suit, with the speed of the spindle. Many other differences might be pointed out; but those given are amply sufficient to show that the exhibit has no tendency to support the defence for which it was introduced.

Next follows exhibit 4, which is a second patent granted to the same patentee for a small horizontal hand-drill, with one motion or speed. By the specification it appears that it is fed automatically by certain described devices, which are so entirely unlike those employed in the reissued patent, both in their combination and mode of operation, that it is not deemed necessary to waste words in their description, as it is clear that the invention, if any, secured by the patent, is in every material respect different from the patent in suit.

Nor will it be necessary to examine very fully two other exhibits introduced by the respondents, for the same reasons. They consist of two patents issued to George C. Taft, of which the first in date is for an improved drill-shaft apparatus, and in the construction of the machine, so far as respects its automatic feed arrangement, it bears a pretty strong resemblance to the mechanism described in exhibit 3, already somewhat fully described; but it is not adapted to feed a drill running at different speeds, and in that respect bears no resemblance to the mechanism described in the reissued patent in suit. Complicated as the devices of the feeding apparatus are, it is quite difficult to compare the same with the more simple mechanism found in the machine of the complainant, except by saying that they are unlike the former in almost every important particular.

Three years later, the same patentee obtained another patent, called in this case exhibit 5, which is also for an improved

hand-drill or drilling-machine of a horizontal construction. According to the specification, the invention consists in the arrangement and application of a support-piece to the slide-rod, together with the drill-shaft, and the operating mechanism of such shaft, by the employment of which the patentee is enabled to support not only the vibrating lever of the pawl, but other parts of the drilling apparatus, and particularly to employ a driving-shaft and certain gears for the purpose of increasing the speed of the drill-shaft.

Evidently it is an improvement grafted upon the prior invention of the patentee, bearing very little resemblance to the invention of the complainant, except that it has automatic feed devices, by which alone the drill is fed to the work. Precisely what the feed mechanism is it is difficult to state, as the only description given of it in the specification is the following : During the rotations of the drill-shaft the pawl mechanism will be put in action in such a manner as to turn the ratchet-gear and the tubular shaft, and thus cause the drill-shaft to be moved forward regularly and gradually, in order that the drill may be fed into an article during the process of drilling the same.

Should inquiry arise as to what the mechanism is that performs those functions, it is very clear that no one can answer the question without other means than those given in the specification. Better description is given of the operating devices of the machine, in respect to which it will be sufficient to say that they are quite unlike those shown in the specification of the complainant.

Improvements in machinery for making envelopes and paper were made by E. W. Goodale, and the patents granted to him were introduced by the respondents as exhibits in the case to support the first and second defences ; but it is so obvious that they have no such tendency, that it is not necessary to give the exhibits any special examination.

Certain extracts from a printed publication were also introduced in evidence by the respondents for the same purpose, in respect to which it is, only necessary to state that, in the judgment of the court, they fall far short of what is required in such a controversy to constitute satisfactory proof that the

invention had been described in a printed publication prior to the invention of the complainant. *Seymour* v. *Osborne*, 11 Wall. 555.

These several exhibits have been carefully examined; and the conclusion of the court is, that there is not found in any one of them a machine with a frame secured as described in the complainant's specification, to which a drill-spindle is attached by means of the device called a nut, with a hand-wheel and the described screw and the automatic feed devices, consisting of the ratchet carrying the drill-shaft, the pawl, and the spring keeping the lever in contact with the cam mounted on the hand-wheel, which is capable of being operated at two different speeds ; nor is there found in any one of them the two kinds of feeding mechanism designed to be employed in the manner and for the purposes described in the complainant's specification. For these reasons, the court is of the opinion that the first and second defences set up by the respondents in their answer and amended answer must be overruled.

Evidence of a parol character was also introduced by the respondents, having some slight tendency to prove that the complainant is not the original and first inventor of the patented improvement; but it is so slight, and so manifestly insufficient to overcome the *prima facie* presumption arising in favor of the complainant, that the court does not deem it necessary to enter into the details of the evidence.

Suppose that is so, still it is insisted by the respondents that the improvement was in use in divers places in the United States prior to any alleged invention thereof by the complainant.

Before proceeding to examine the evidence in that regard, it is proper to remark that the defence as pleaded does not state how long the invention had been in public use, nor does the answer state any thing from which it can be inferred when the public use commenced, except that it was prior to any alleged invention thereof by the patentee.

Authority is given by the act of Congress to plead or set up in the answer that the invention had been in public use or on sale in this country for more than two years before the application for a patent. Rev. Stat. (2d ed.), sect. 4920.

Inventors may, if they can, keep their invention secret; and if they do for any length of time, they do not forfeit their right to apply for a patent, unless another in the mean time has made the invention, and secured by patent the exclusive right to make, use, and vend the patented improvement. Within that rule and subject to that condition, inventors may delay to apply for a patent; but the Patent Act provides, as before stated, that the defending party in a suit for infringement may plead the general issue, and, having given the required notice, may prove in defence that the patented invention had been in public use or on sale for more than two years before the alleged inventor filed his application for a patent, and the provision in that event is, that if the issue be found for the party setting up that defence, the judgment or decree shall be in his favor.

Different phraseology was employed in a prior Patent Act, which made it necessary for the party setting up such a defence to prove that the invention had been in public use or on sale, with the consent and allowance of the patentee, before his application for a patent was filed. 5 Stat. 123. Decided cases adjudicated under that act and certain earlier acts show that a very limited public use or sale of the invention, if prior to the application and with the consent and allowance of the patentee, was held to be sufficient to defeat the right of the inventor to the protection of the Patent Act. *Pennock* v. *Dialogue*, 2 Pet. 19; *Whiting* v. *Emmet*, Baldw. 310; *Ryan* v. *Goodwin*, 3 Sumn. 518; *Wyeth* v. *Stone*, 1 Story, 281.

Congress, however, interfered, and provided that no patent shall be held to be invalid by means of such purchase, sale, or use prior to the application of a patent, except on proof of abandonment to the public, or that such purchase, sale, or prior use has been for more than two years prior to such application. 5 Stat. 354.

Public use or sale, even under that provision, which was in the nature of an amendment to the earlier Patent Act, in order to defeat the right of the inventor to a patent, must have been for the period prescribed, with his consent and allowance. *Pierson* v. *Eagle Screw Co.*, 3 Story, 305.

Unlike that, the present Patent Act provides that the defending party, having given the requisite notice, may prove

that the invention has been in public use or on sale in this country for more than two years before the inventor applied for a patent, and that if that special matter is found in his favor he is entitled to the judgment or decree with costs. Nothing of the kind is pleaded in the answer, nor is there any thing in the record to support the proposition, if it had been well pleaded, from which it follows that the fourth defence must be overruled.

Two assignments of error, to wit, the second and the fifth, must not be passed over without comment. They are to the effect that the court erred in holding that the patentee was the original and first inventor of the respective improvements specified in the second and fourth claims of the patent.

Two objections to those assignments of error exist, each of which is sufficient to show that they cannot be allowed: 1. That there is no such defence set up either in the answer or amended answer. Nothing can be assigned for error which contradicts the record, nor can an appellant be allowed to assign for error the ruling of the court in respect to any defence not set up in his plea or answer. Appellate courts cannot amend the pleadings, nor can they allow that to be accomplished by an assignment of error. 2. Neither of those defences is pleaded as required by the act of Congress, as each is pleaded to a separate claim of the patent, and not to the invention which is embodied in the specification.

Such defences, if well pleaded to the invention described in the Patent Act, are good defences, as the act of Congress provides that the defending party may plead a general denial of the charge of infringement, and, having complied with the requirement as to notice, may give such special matters in evidence to defeat the patent. Under such a pleading and notice, the respondent in an equity suit may prove that the patentee was not the original and first inventor of the alleged improvement, or that it had been patented or described in some printed publication, or that the invention had been in public use or on sale in this country for more than two years prior to the application; and the provision is, that the judgment or decree must be in favor of the defending party, if he proves any one or more of these special matters.

Where the thing patented is an entirety, consisting of a single device or combination of old elements, incapable of division or separate use, the respondent cannot escape the charge of infringement by alleging or proving that a part of the entire thing is found in one prior patent or printed publication or machine, and another part in another prior exhibit, and still another part in a third one, and from the three or any greater number of such exhibits draw the conclusion that the patentee is not the original and first inventor of the patented improvement.

Attempts of the kind are sometimes made; but it is plain that the plea, which in the action at law is the general issue, is required to be addressed to the entire charge of the declaration, and that its effect is to cast the burden of proof upon the plaintiff to make good the charge of infringement. Infringement is the charge made by the party seeking redress; and it is competent beyond all doubt for the defending party to show that he does not infringe at all, or that he has infringed only a part of the claims of the patent. Authority for that proposition is found in the very nature of the issue between the parties; but the only authority for attacking the originality or validity of the patent is that given in the act of Congress, and consequently the attack must be made in the mode the Patent Act prescribes. Rev. Stat., sect. 4920.

Defences of the kind must, if the thing patented be an entirety, and incapable of division or separate use, be addressed to the invention, and not merely to one or more of the claims of the patent if less than the whole invention. More than one patent may be included in one suit, and more than one invention may be secured in the same patent; in which cases the several defences may be made to each patent in suit, and to each invention included in the bill of complaint. *Gill* v. *Wells*, 22 Wall. 24.

Combination patents may be mentioned as examples where more than one invention may be secured by a single patent, and in such a case the patentee may give the description of each combination in one specification. Cases of the kind often arise; and in such a case the party charged with infringement may plead and prove the statutory defences to each

invention, just as if the two combinations had been embodied in separate patents, for the reason that each combination in such a case, like what is secured in a division patent, must be regarded as a distinct invention, at least for the purpose of pleading the statutory defences to the charge of infringement.

Ample support to that proposition is found in the language of the Patent Act and in the practice of the courts; but where the patent is an entire invention, incapable of division or separate use, the defences authorized by the act of Congress must be addressed to the thing patented, and the evidence to support the defence must show that the patentee was not the original and first inventor, or establish some one of the other statutory defences.

Patentees seeking redress for the infringement of their patent must undoubtedly allege and prove that they are the original and first inventors of the alleged improvement, and that the same has been infringed by the party against whom the suit is brought. In the first place, the burden to establish both of those allegations is upon the party instituting the suit; but the law is well settled that the patent in suit, if introduced in evidence, affords to the moving party a *prima facie* presumption that the first allegation is true, the effect of which is to shift the burden of proving the defence upon the defending party. *Blanchard* v. *Putnam*, 8 Wall. 42; *Seymour* v. *Osborne*, 11 id. 538. Infringement being denied, the burden of proof is upon the complainant to establish the charge.

Where the invention is embodied in a machine, manufacture, or product, the question of infringement, which is a question of fact, is ordinarily best determined by a comparison of the exhibit made by the respondent with the mechanism described in the complainant's patent. Both parties gave evidence upon the subject; but the weight of the proofs, in the judgment of the court, supports the affirmative of the charge.

Strong support to that view is derived from the stipulation filed in the case, in which the respondents admit that between the date of the patent and the filing the bill of complaint they made and sold drilling-machines with a vice attached, like complainant's exhibit B, which is equivalent to a confession of the

charge, leaving open only the question as to the extent of the infringement.

They also except to the master's report; but the exception is not well founded, and the amount of profits found being quite reasonable, it is clear that the decree of the Circuit Court is correct.

*Decree affirmed.*