WAKEFIELD SHEET PILING CO. v. CITY OF NEW ORLEANS et al.†

(Circuit Court of Appeals, Fifth Circuit. March 1, 1910.)

No. 1,918.

PATENTS (§ 328*)—VALIDITY—PRIOR PUBLIC USE BY ANOTHER—SHEET PILING.
    The Wakefield patent, No. 370,108, for sheet piling made of triple-lap planks, *held* valid as against the defense of prior public use by another, where such use was within less than two years prior to the application, and in addition to the prima facie case made by the patent there was evidence tending to carry the date of invention by the patentee back of such use.
    [Ed. Note.—Priority and continuance of public use of invention as affecting patentability, see note to Eastman v. City of New York, 69 C. C. A. 646.]

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

Suit in equity by the Wakefield Sheet Piling Company against the City of New Orleans and others. Decree for defendants, and complainant appeals. Reversed.

Benj. W. Kernan, Jno. W. Hill, and Henry P. Dart, for appellant. Omer Villere and Edgar H. Farrar, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. This is a suit in equity for the infringement of letters patent No. 370,108, granted to James A. Wakefield, September 20, 1887, for improved sheet piling, to wit:

"A sheet piling composed of three thicknesses of plank secured together by bolts or rivets, so that the middle plank shall project out at one edge of a section at a distance corresponding to the depth of the groove whereby, when several sections are driven down, the edges of the exterior plank and the in-

ner plank will respectively come together and form a wall or sheet piling of three thicknesses of plank securely held together and the joints centrally broken, as and for the purposes specified."

The application for patent was filed July 14, 1887, and in connection with drawing describes the invention as follows:

"Figure 1 is an end elevation of the framework of a dam, with an edge view of my improved sheet piling in position to be driven down into the bed of the water. Figure 2 is a perspective representation of four sections of my

FIG. 1.

FIG. 3.

FIG. 2.

FIG. 4.

improved piling in position relatively as they are when driven, except the right-hand section, which is in position to be driven. Fig. 3 is a side elevation of one section of piling; Fig. 4, a top or plan view of Fig. 3. The purpose of this invention is to provide a sheet piling which will prevent water from getting through it or under it. It has been the custom to construct sheet piling of several thicknesses of plank, with the intention of setting them so closely together as to prevent water from getting under or through such piling and breaking down the dam or earth shore; but thus to drive sheet piling has been found to be an engineering impossibility, as experienced by government officers and others equally skilled. The theory that one row of planks can be driven to lie so closely to a previously driven row of plank as to exclude water remains a theory unsupported by practice. Attempts have been made to drive a sheet piling of tongued and grooved solid stuff; but this proved to be a failure, in that the tongues and grooves could not be available without cutting away to form them three-sevenths of the lumber."

The bill prays for an injunction against further infringement and for an accounting of profits and damages. The term of the patent having expired during the pendency of this suit, no injunction can issue, and only an accounting for infringement during the life of the patent is now claimed.

By a liberal construction the answer may be taken as pleading: (1) The general issue; and thereunder (2) that Wakefield was not the original first inventor or discoverer of any material or substantial part of the thing patented; (3) that it had been in public use in this country for more than two years before application was made for a patent; (4) that the discovery had been abandoned to the public; and (5) use of the patented method is admitted.

On evidence taken, the case was tried in the Circuit Court, and the learned judge thereof dismissed the bill for the following reasons:

"Without deciding whether the other defenses are valid or not, I am therefore clear that there must be judgment against the complainant on the ground that it had been shown that the device of triple-lap sheet piling was in public use for nearly two years before Wakefield applied for his patent, and it is not shown that Wakefield's alleged invention antedated this use."

From a decree dismissing the bill, this appeal is prosecuted.

The complainant's evidence establishes, and the answer practically admits, that the claimed invention was a useful article, manufacture, or device, and as such patentable. The answer charges, however, that the same or material parts of the claimed invention were well known and in public use in the United States anterior to Wakefield's claimed invention, the same having been employed by one C. J. A. Morris, engineer and contractor, in constructing a dam across the Mississippi river in St. Cloud, Minn., in 1883 and 1884, and that the same or material parts of the claimed invention were used in construction work in Providence, R. I., in the years 1884 and 1885 by one A. McL. Hawks, civil engineer. The evidence shows clearly that what Hawks used in 1883, 1884, and 1885 was not the patented device of three planks spiked together, but a double sheeting reinforced with one plank at the corners. The evidence in regard to Morris' use of the three planks spiked together on the St. Cloud dam in Minnesota shows that, whatever the use was, it was in the fall of 1885, and within two years prior to Wakefield's application for a pat-

ent, and, therefore, does not necessarily defeat the patent.    See Bates v. Coe, 98 U. S. 31, 46, 25 L. Ed. 68.

Assuming that it was in all respects the device claimed by and allowed Wakefield in his patent, the question is whether Wakefield's discovery antedated the public use of the device by Morris on the St. Cloud dam.    This question is decisive of the case, for the claimed abandonment of his invention by Wakefield is not shown by any sufficient evidence.    See Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000.    Wakefield was living at the commencement of the suit, but died pending the same, and his evidence was not taken; and, therefore, as no records have been shown, the decision as to time of invention must be made on the prima facie case made by the patent, the secondary evidence of his associates and acquaintances, and the circumstances preceding and following the issuance of the patent.

As to the presumption in favor of the validity of the patent, see United States v. Bell Telephone Company, 167 U. S. 240 et seq., 17 Sup. Ct. 809, 42 L. Ed. 144.    Three of Wakefield's associates and acquaintances testified as to conversations with Wakefield, and, finding no motion to suppress their depositions in this respect, we think their evidence, under the circumstances, entitled to some consideration.

Mr. Rosenthal, who is now the general sales manager of the Davenport Locomotive Works, testifies that he saw Mr. Wakefield almost daily and had frequent conversations with him about his invention. "Mr. Wakefield told me many times that he considered the triple-lap sheet piling one of the greatest inventions in the engineering field in his time.    He told me that he had been perfecting sheet piling for several years before he took out a patent.    He said that he wanted to make it perfect, although he had been using it before getting the patent, practically in the shape in which it was patented."    Asked as to whether Wakefield said he had used it, the witness said: "He told me he had used it himself, but had not put it on the market."    The witness testifies that he had no interest in the outcome of the suit in any way.

Mr. Peckham, who had been in technical and mechanical business for years, is now vice president of the William J. Oliver Manufacturing Company, of Knoxville, Tenn.    At the time he knew Wakefield he was Western manager of Engineering News.    He frequently talked with Wakefield about his invention, being instructed by the publishers of Engineering News to get all the information he could on the subject for his paper.    He used to discuss Wakefield's engineering experience with him, as he (the witness) was interested and had been working in hydraulic engineering more than any other.    On being asked as to whether Wakefield told him when he invented his triple-lap sheet piling, the witness said:

"Yes, he said that he had been using this for five or six years, and that he had experimented with it with a view to getting something that would be absolutely water-tight and suitable for cofferdam work, and had made different designs at different times, but he had finally settled on this one.    That was the one I got from him and wrote up in the paper."

And in answer to a cross-question as to use the witness said:

"I stated that he had told me that he had been experimenting for five or six years, and that·he has used this particular form in ·a number of places, believing that it was.the best type he had gotten out."

Mr. Nelson, the secretary of the complainant company, testified that Wakefield died on or about January 19, 1906, in Chicago. This was before the defendants had completed their depositions for the defense. It seems that˜Morris testified in November, 1905, nearly two months before Wakefield died. This was the testimony referred to by Nelson when he testifies:

"Mr. Wakefield was not required in making up our first proofs, and we had nothing calling for a rebuttal until the defendant had put in certain testimony, and then we consulted Mr. Wakefield as to this identical point that we are making to-day, as to the date of Mr. Wakefield's first making his patented triple-lap sheet piling invention. In the meantime, Mr. Wakefield died. Mr. Wakefield stated· to me on several occasions that he made this invention several years prior to the date of his obtaining the patent therefor, or his application for patent; that he had occasion to stop a leak on some work that he had that required great expedition, and in that connection he nailed three boards together and cut off a pocket of sand and water that was bothering him, I think in the wing of some dam in the north: that he buried the material, but watched for results, and found it.perfectly effective, and studied the matter for a long time, to see if he could improve on it. Q. Did he say why he carefully covered it up, as· you have testified? A. He said he covered it so that others would not see it and claim the invention., He considered it a great invention at the time of its first use. * * * Q. You may state whether or' not Mr. Wakefield at any time told ˜you why he did not apply for a patent immediately after making that first experiment with sheet piling which he covered up? A. To my questions along the same line as this question put to Mr. Wakefield, he stated several times that he was·busy for several years, and also that he wished to study over the matter, and see if there was any method by which the matter could be improved or parties get a patent that would circumvent his ideas."

In his original examination, Morris, who claimed that he had used the triple-lap sheet piling process, as afterwards patented by Wake-field, for the St. Cloud dam in Minnesota, further testified:

"I know that there is a patent called 'Wakefield sheet piling,' said to be invented by Mr. James A. Wakefield. I know this from seeing it illustrated and ·advertised in engineering journals for the last 12 or 15 years; also from having been called upon by Mr. Wakefield, or some one claiming to be he, in the winter of 1888 and 1889, and notified that I was infringing on his patent rights by using this method of construction in building a cofferdam for a bridge pier at St. Paul. When I explained that I had never heard of the patent before, and that I had used that method of construction a year or more before the date of the patent, Mr. Wakefield did not file any claim for damages or roy-alty against me, and I never heard anything further from him, or any representative of his."

In a subsequent deposition, Morris, answering cross-interrogatories, testified that he was a member of the firm of contractors which used the Wakefield sheet piling in the construction of government harbor work at Two Rivers, Wis., in 1904; that his firm paid present complainant for the use of said Wakefield sheet piling used in the construction of such work, for 1,844 lineal feet, a royalty of 25 cents per lineal.foot; that he made the payments himself. The case shows, irrespective of the letter exhibits, that, closely following the issuance

of the patent to Wakefield, the method of triple sheet piling according to his claim went into general use with government railroad and contracting engineers, with full recognition of the validity of the patent.

Considering the presumption in favor of the patent, the evidence of Nelson, Rosenthal, and Peckham, the fact that Morris, who used triple sheet piling at the St. Cloud dam in 1885, but never made or claimed invention, afterwards became a licensee of the patent and paid royalty, and the recognition of Wakefield as the inventor of the process by the skilled engineers and the public generally, and nothing to the contrary, we feel constrained to hold that no public use antedates the invention of Wakefield. See Tilghman v. Proctor, 102 U. S. 707, 713, 26 L. Ed. 279.

For the reasons herein given, the decree appealed from is reversed, and the cause is remanded, with instructions to enter a decree for complainant for an accounting of profits and actual damages.