979

## AVERY v. HILDER.

### Patent Appeal No. 3994.

Court of Customs and Patent Appeals.

Nov. 28, 1938.

Theodore H. Lassagne, of San Francisco, Cal. (Leonard S. Lyon, of Los Angeles, Cal., and Charles M. Thomas, of Washington, D. C., of counsel), for appellant.

George F. Scull, of New York City (Stuart Hilder, of Orange, N. J., pro se

and George M. Anderson, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, awarding to Stuart Hilder, the junior party, priority of invention expressed in a single count relating to a calculating machine.

The decision of the board reversed the decision of the Examiner of Interferences, which had awarded priority to the appellant Avery. Avery's application was filed on September 26, 1930, and Hilder's application was filed on March 11, 1931.

The single count of the interference reads as follows: "1. In a calculating machine having a plurality of registers; the combination with means for operating said registers in unison to effect alternative positive or negative registration, means for reversing the sign character of the registration upon one of said registers relatively to the sign character of the registration upon another register, and control means including a member operable to determine the sign character of the registration upon said last-named register and to effect the registration; of a member settable by the control member to control the adjustment of the reversing means and adapted to remain in such set position upon retraction of the control member, and means automatically operable after such retraction to restore the last-named member from set position."

The invention of the count is for a combination of elements. Each element except one is referred to as a "means." The particular combination in the count at bar includes certain control devices intended to simplify the setting or adjustment of the machine to perform a division operation. In setting the machine to divide, it is necessary that the relative action of certain members of the machine be reversed with respect to their manner of operation in multiplication or addition. The invention defined in the count involved relates to control means whereby all the said reversals can be effected by a means which is automatically operable.

Hilder moved to dissolve the interference upon the ground that Avery did not disclose the invention of the count in his

application. The motion (matter in brackets being supplied by us) reads:

"Now comes Stuart Hilder and moves to dissolve the above-entitled interference for the reason that the party Avery has no right to make the claim corresponding to the count of the issue.

"In support of the foregoing motion, it will be contended that the specification and drawing of the Avery application involved in the interference does not disclose the following elements of the count:

"1. 'Control means including a member operable to determining the sign character * * * [of the registration upon said last-named [dividend] register] and to effect the registration', combined with 'a member settable by the control member to control the adjustment of the reversing means.' This is not disclosed because Avery's 'division lever' 600, which is the only member controlling the reversing lever 157, has no apparent connection with the sign setting means of the main actuators, nor with the clutch engaging mechanism.

"2. Further, Avery does not disclose 'means automatically operable after such retraction to restore the last-named member [the member settable by the control member] from set position', since no releasing means for the latch 604 is disclosed."

There is no serious dispute here as to what the Avery application discloses. The Primary Examiner overruled Hilder's motion to dissolve and held that the Avery application was a sufficient disclosure of the count notwithstanding the fact that there was no mention or showing of the two elements to which Hilder had directed attention. He called attention to the fact that Avery's application was assigned to the Marchant Calculating Machine Co. and that the Marchant machine embodied automatic division mechanism which was disclosed in patent No. 1,970,096, issued August 14, 1934, to one Lerch, which patent was owned by Avery's assignee, and that although the Avery application made no reference to the Lerch patent "Judicial knowledge" was taken of it. He stated that he believed that it was clear that Avery contemplated improving the Lerch machine.

Avery moved to amend his application by the substitution of additional counts, by adding more descriptive matter in his specification, by amending his drawings to show new reference characters, and by including reference to the said Lerch patent. The motion to amend was denied by the Examiner of Interferences upon the ground that the right of a party to make a claim must be determined upon the basis of his original disclosure.

Hilder was put under an order to show cause why judgment on the record should not be entered against him, and, having failed to make any showing, the Examiner of Interferences awarded priority of invention to Avery.

Upon appeal, the board stated that it was not necessary to discuss the structures in detail since the question was largely one of law or practice. The board stated the issue as follows:

"It is not believed to be necessary to go into detailed discussion of the structures involved here since the question presented is largely one of law or practice. The drawings of Avery diagrammatically show two elements apparently in section at the rear of the latch 604. These elements are not numbered or referred to or described in the specification. It appears that in order that Avery's case support the count, the structure and action of these undescribed elements should be given. Avery attempts to rely upon a patent to Lerch No. 1,970,096 which is assigned on the record to the same assignee as the Avery case and which shows generally a machine similar to that outlined in Avery's drawing and which even more specifically has quite a number of parts which appear to be the same. Parts are, in fact, so similarly shown, that it appears obvious that the draftsman must have had one before him while preparing the other. In view of this similarity, the Primary Examiner, treating the motion to dissolve, held that he would take judicial notice of this fact and accordingly assume that certain features indicated in Avery's drawing would necessarily be the same in kind and function as that of the Lerch patent. He accordingly applied this conclusion to the showing of the two elements above mentioned shown only in cross-section and not identified by number or description. The Lerch patent shows the two members in what appears to be almost an exact copy. In the Lerch patent these members are identified by numbers and their structure and function is fully explained as associated with other elements of the machine, particularly as extending across the ma-

chine and being connected with the cam member 693 which is allowed to ascend when the counting carriage reaches the limit of its travel or the so-called home position.

"The question is, therefore, presented whether benefit of an earlier case may be given to an applicant where the drawings appear to be substantially copies as to numerous parts, but wherein the earlier case describes elements and function not shown in the disclosure in the later case and where the later case did not at all make any reference to or otherwise identify the earlier case.

"Avery contends that in view of the practice followed in the Kitselman v. Reid, 1920 C.D. 26; Morgan v. Drake, Cust. & Pat.App., 1930 C.D. 118, 36 F.2d 511 and Hopkins v. Newman, 1908 C.D. 395, 30 App.D.C. 402 and others, that benefit of the earlier case should here be accorded the later case, that is, to the application here involved because of the disclosure in the Lerch patent and merely on the ground that the appearances of certain other parts than those in question are similar."

The board did not discuss the cases cited by the parties at any great length, and in one paragraph decided the issue as follows: "We have carefully considered this situation and reach the conclusion that the decisions relied upon by Avery are not controlling in this case and do not afford basis for Avery's contention. In each of the cases cited there had been very definite reference to the prior case upon which reliance was desired. The practice followed in these cases appears to be recognized as established but we are unwilling to approve extension of the principle to a case like the present where reliance would have to be placed upon mere similarity of showing of some parts for the assumption that other parts not fully shown were necessarily present. We believe this would introduce too much uncertainty to be fairly warranted as a matter of practice."

To the facts above set out, which are not in dispute, it might be added that there is not only no reference in appellant's application to the Lerch patent, but there is no reference to the prior art concerning the subject matter here in controversy. Reference in the Avery specification is made to patents to Friden, No. 1,643,710 of September 27, 1927, and No. 1,682,901 of September 24, 1928, but it is not contended that the Friden patents disclose the two important features involved in the motion to dissolve, although it is urged that the citation of those patents in the specification suggests, at least to some extent, the character of machine which Avery intended to improve.

Furthermore, it is important to note that the Avery application was filed approximately four years before the Lerch patent issued. There was no showing in the Avery application and nothing to suggest that his structure comprised the elements essential to the function of the particular kind of calculating machine called for by the count.

In this court, appellant has stressed with great earnestness the application of a principle, frequently applied in circumstances somewhat comparable to those at bar, to the effect that where invention is made with respect to an improvement in an existing machine it is sufficient to describe and illustrate only the new arrangement and to indicate in a general way its application to the parts of the machine that are old.

Bates v. Coe, 98 U.S. 31, 39, 25 L.Ed. 68, is relied upon where it was said: "In case of a claim for a combination, where all the elements of the invention are old, and where the invention consists entirely in the new combination of old elements or devices whereby a new and useful result is obtained, such combination is sufficiently described if the elements or devices of which it is composed are all named, and their mode of operation given, and the new and useful result to be accomplished pointed out, so that those skilled in the art and the public may know the extent and nature of the claims, and what the parts are which co-operate to produce the described new and useful result. * * *"

Reliance is also made on the case of Hogg et al. v. Emerson, 6 How. 437, 484, 12 L.Ed. 505, where it was stated that the applicant "need not describe particularly, and disclaim all the old parts. * * *"

Webster Loom Co. v. Higgins, 105 U.S. 580, 26 L.Ed. 1177, is quoted from at great length. In that case the general principle was announced that inventors understand the language of their brother scientists and that one does not need to describe and set out that which is common and well-known even though it be a part of the machine which he has improved. It was there suggested by the court that in

cases of improvements on the appendages of a steam-engine, such as the valve gear, the inventor, in order to make himself understood, is not obliged to describe the engine.

These principles above quoted and applied have long been well understood, but as we see the instant case the situation here is not on all fours with the facts in the cases relied upon by the appellant. Here is a combination claim where elements of the combination that lend vitality and patentability to the claim are neither shown nor suggested in the Avery application, nor is there any showing that would make one skilled in the art, at the time the Avery application was filed, understand that the Avery machine was to function in accordance with the requirements of the count. It may be that Avery had in mind that in the construction of his machine he intended to add the elements he disclosed in his application to elements elsewhere disclosed and to have the combined machine which the count calls for, but there is nothing in the disclosure to prompt this belief. The Avery and Lerch applications both being owned by the Marchant Calculating Machine Co., it may be that Avery knew what the Lerch application contained and that the particular combination of the count at bar might have been in his mind, but surely that is no warrant for applying the broad principle that that which is common knowledge to those skilled in the art need not be inserted in a patent application when the combination count embraces an element of the prior art. The examiner erroneously took judicial knowledge of the Lerch patent. The Lerch application was pending but was not shown in the prior art on the date Avery filed.

Applicant calls attention to the phrase in the decision of Webster Loom Co. v. Higgins, supra, which reads (page 586): "He may begin at the point where his invention begins, and describe what he has made that is new, and what it replaces of the old." But, in the instant case, Avery has not described the relationship of what is new with that which is in the count and is old. He has failed to describe or disclose two important features without which the device would fail to function in the manner required by the count.

We have examined all the authorities cited by appellant in his original brief, and we think that none of them are in point on the issue here presented. The cases in appellant's "Memorandum of Authorities," submitted after the oral argument, are to the effect that a patent bearing a filing date, prior to the filing date of an application for a patent, or a patent sued upon, but maturing into patent at a date subsequent to the filing date of either, may be combined with other patents as a part of the prior art. This line of cases is not in point on the question as to what was commonly known to those skilled in the art at the time Avery filed his application. Other cases are relied upon on the proposition that a later-filed application may be supplemented by the prior art and it is urged that these authorities support the proposition that it may be done without making any cross reference to the prior art in the application. Surely this would be no warrant for a holding that a pending application to which the public did not have access would be prior art, in the sense that we are using that term here, at the date when Avery filed his application.

No decision by any court on the particular issue at bar, involving a statement of facts comparable with the instant ones, has been cited by either of the parties hereto and none has been found by us. However, McCrady's "Patent Office Practice," Sec. 97, page 74, seems to us to state the law which should be applied in cases like that at bar with reference to the effect to be given pending applications which have not matured into patents. We quote therefrom as follows:

"Therefore it is entirely proper to rely upon the disclosure of a patent to complete a description, because that is something which is already in the prior art. Los Alamitos Sugar Co. v. Carroll, 9 Cir., 173 F. 280. But applications which have not yet matured into patents are not a part of the art, and they may never mature into patents; therefore, it is improper to rely upon them to complete a disclosure. Ex parte Kellogg, 120 O.G. 2754, 1906 C.D. 84. This rule has been applied both where the reliance on the pending application is to complete a disclosure of matter which is illustrated in the drawings (Ex parte Borgfeldt, 49 O.G. 132, 1889 C.D. 199) and also where another application is relied upon for a disclosure of a structure with which the instant invention is to be used (Ex parte Chadwick, 57 O.G. 124, 1891 C.D. 169). Where the utility of an invention cannot be understood without knowledge of some prior machine or

process, and that prior machine or process is described in a pending application, it is improper to rely upon that disclosure. Ex parte Scott, 95 O.G. 2683, 1901 C.D. 59. But if the instant invention can be understood without reference to the pending application, there is no objection to referring to a pending application to illustrate a preferred use, or a preferred device with which it is to be used. Ex parte Williams, 183 O.G. 503, 1912 C.D. 288."

See, also, Stringham's "Patent Soliciting and Examining", Sec. 226.

In view of the above considerations we are of the opinion that the motion to dissolve upon the grounds stated should have been sustained and that the decision of the board in reversing that of the Examiner of Interferences was not erroneous and its decision is therefore affirmed.

After the original transcript of record had been certified from the Patent Office, appellee suggested a diminution thereof, and this court issued a writ of certiorari requiring that certain additions to the record be certified by the Commissioner of Patents and that the same be printed. In pursuance of said writ, said additions were made to the record. It is our view that the additional record so certified and printed (pages 81 to 84, inclusive) was unnecessary to a proper determination of the issues in this case, and that the cost of printing the same should be taxed against the appellee, and it is so ordered.

Affirmed.