MINNESOTA MINING AND MANUFAC-
TURING COMPANY, a corporation of
Delaware, Plaintiff-Appellee,

v.

TECHNICAL TAPE CORP., a corpora-
tion of New York; Technical Tape of
Illinois, Inc., a corporation of Illinois;
and Levin Brothers Paper Company, a
corporation of Illinois, Defendants-Ap-
pellants.

No. 13735.

United States Court of Appeals
Seventh Circuit.

Oct. 17, 1962.

Arlie O. Boswell, Jr., Chicago, Ill.,
Robert D. Spille, John A. Mitchell, New
York City, George N. Hibben, Chicago,
Ill., for defendants-appellants.

Edward A. Haight, Chicago, Ill., Har-
old J. Kinney, St. Paul, Minn., S. G. De-
LaHunt, St. Paul, Minn., of counsel, for
plaintiff-appellee.

Before SCHNACKENBERG, CAS-
TLE and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

Minnesota Mining and Manufactur-
ing Company, plaintiff-appellee, owner of
Oace et al. Reissue Patent No. 23,843,
covering an insulating tape, brought suit
in the District Court charging the de-
fendants-appellants with infringement of
the patent. The defendants-appellants
are Technical Tape Corporation, manu-
facturer of the accused tapes; Technical
Tape of Illinois, Inc., a dealer in and dis-
tributor of the accused tapes; and Levin
Brothers Paper Company, a purchaser
and reseller of some of the accused tapes.

Reissue Patent No. 23,843 is a combi-
nation patent relating to a stretchable
and retractable, pressure-sensitive ad-
hesive vinyl plastic insulating tape.
Each of the accused products is such a
tape.

The defendants denied infringement
and asserted invalidity of the patent.
The District Court held the patent to
be valid and that Claims 1, 3, 4, 6, 7, 8
and 9 had been infringed. The defend-
ants appealed and contend, in substance,
(1) that the accused tapes do not fall
within the scope of the patent claims
and that the District Court by its hold-
ing of infringement erroneously ignored

the limitations of the claims; (2) that on the issue of validity the court misinterpreted the prior art relied upon and erred in its finding and conclusion that each of the claims particularly points out and distinctly claims the invention; and (3) that the court erred in denying the defendants' post-trial motion to suspend entry of judgment so that defendants could take depositions to establish an "unclean hands" defense based on alleged anti-trust law violations constituting abuse of patent rights.

The reissue patent here involved has been the subject of other litigation.[1] Typical claims 1 and 6 are set out in full in Sears, Roebuck & Co. v. Minnesota Mining & Mfg. Co., 4 Cir., 243 F.2d 136, footnote at pages 137–138 and will not be repeated here.

The novelty and value claimed for plaintiff's invention is that it permits of the use of polyvinyl chloride, which is normally too stiff and inflexible, in the production of a highly stretchable and retractable insulating tape, especially effective and useful in the splicing of electrical wires and cables and for the insulation and protection of electrical conductors, and at the same time eliminates the deterioration of the pressure-sensitive adhesive applied to the vinyl chloride backing, an effect normally caused by the plasticizers used as the agents to soften the backing. The problem in making a flexible tape with a polyvinyl backing and a pressure-sensitive adhesive had been that when enough plasticizer was added to the polyvinyl chloride to make it sufficiently flexible the plasticizer had a deteriorating effect on the adhesive causing it to soften and become "pasty" or to lose tackiness and become non-adherent. The patent

states that it obtains the unique and valuable result of a plasticized vinyl backing which is in permanent equilibrium with the adhesive. The patent defines this "permanent equilibrium" to mean:

"  *  *  * [T]hat the pressure-sensitive adhesive layer neither softens (becomes 'pasty') nor loses tackiness (becomes non-adherent) on prolonged contact with the backing or film layer. The adhesive remains aggressively tacky, and also remains 'eucohesive' (by which it is meant that it is more cohesive than adhesive such that offsetting or transfer of adhesive material does not result when the tape is unwound from rolls or removed from surfaces to which temporarily applied and can be handled without transfer of adhesive material to the fingers)."

The claims when read in the light of the specifications teach that in order to obtain the novel and valuable features of the invention it is necessary to use a combination of plasticizer of low molecular weight and plasticizer of high molecular weight. The low molecular weight plasticizers are identifiable with plasticizers described in some of the examples given in the specifications, and plasticizers referred to in some of the claims, as being of the "liquid" type. The high molecular weight plasticizers are identifiable with those described or referred to as the "resinous", "non-migratory" or "permanent" type. The claims state the proportion of plasticizer materials to polyvinyl material, and to each other, as approximations but within defined limits.[2] And, the specifications point out:

"It will be understood that, where specific ratios of specific polymers,

1. See, for instance: Minnesota Mining & Mfg. Co. v. Superior Insulating Tape Co., 8 Cir., 284 F.2d 478; Minnesota Mining & Mfg. Co. v. United States Rubber Co., 4 Cir., 279 F.2d 409; Sears, Roebuck & Co. v. Minnesota Mining & Mfg. Co., 4 Cir., 249 F.2d 66; Sears, Roebuck & Co. v. Minnesota Mining & Mfg. Co., 4 Cir., 243 F.2d 136, and district court cases referred to in the cases cited.

2. The proportions recited in typical claim 1 are "a stable blend of a film-forming polymer of monomers including at least a major portion of vinyl chloride, a substantially non-volatile liquid phthalyl ester plasticizer amounting to 8 to 20 parts per 100 parts of said polymer, and a soft and viscous low-acid-number alkyd plasticizer resin in amount at least equal to the amount of said phthalyl ester plas-

low molecular weight plasticizers, and high molecular weight plasticizers are described in the examples, substitution of equivalent but somewhat different materials may require alteration of these ratios in order to obtain equivalent results, all in conformity with well-recognized principles."

The materials which are described as constituting the novel and useful combination were all well known but the invention is claimed to lie in the peculiar combination of plasticizers of low molecular weight and of high molecular weight to achieve the results stated.

■■ The cause was heard on the pleadings, stipulations, answers to interrogatories, depositions, exhibits, and the testimony of witnesses for the parties, including expert testimony. Consequently, insofar as the sixty-one detailed findings of the District Court concern factual issues such as the use made of prior art, the nature of the improvement made over prior art, and the characteristics, qualities and types of plasticizer ingredients used in the manufacture of defendants' tapes, Rule 52(a) of the Federal Rules of Civil Procedure (28 U.S. C.A.) applies. The scope of our review of such findings is limited to a determination of whether or not they are "clearly erroneous". Armour & Co. v. Wilson & Co., 7 Cir., 274 F.2d 143, 156. If they find support in the evidence we are bound thereby.

The District Court found, among other things, that it was not for want of materials, nor for want of a market, that the appearance of the tape product of the patent in suit was delayed, and that earlier attempts by others to produce such a vinyl backed tape had failed. The record amply supports those findings.

In their brief in this Court the defendants rely upon two prior art patents, Schmidt patent No. 2,332,265 and Nollau patent No. 2,118,101. The District Court did not err in concluding that these patents did not anticipate plaintiff's invention.

The Nollau patent is directed to a cloth surgical tape waterproofed with plasticized cellulose nitrate. An adhesive is applied to the waterproofed woven cloth fabric backing. The patent teaches the use of a rubber adhesive-innocuous plasticizer to avoid deleterious action of the plasticized cellulose nitrate composition on the pressure-sensitive adhesive which would cause the adhesive to become excessively sticky and destroy the properties necessary for a satisfactory adhesive. But Nollau does not mention nor disclose, much less teach the solution of, the problem of imparting high stretchability and retractability to a polyvinyl chloride backing and at the same time maintaining it in permanent equilibrium with the adhesive. Nor is Nollau concerned with electrical insulation properties.

The Schmidt patent was a file wrapper reference. It relates to a pressure-sensitive adhesive sheet or tape consisting of a plasticized polyvinyl chloride backing and an adhesive containing polyisobutylene. It recognizes the difficulty of using plasticized polyvinyl chloride backing with pressure-sensitive adhesives but does not teach a solution which would make it possible to obtain a highly stretchable and retractable tape. The District Court's findings that the Schmidt tape was relatively non-stretchy, and that there is no evidence that it was ever commercially sold or marketed for any purpose, find support in the record. Schmidt neither attained the results of the Oace et al. patent nor taught how to

ticizer, the total amount of said plasticizers being about ⅓ to ½ the amount of said polymer". The porportions recited in typical claim 9 are: "a stable blend of (a) a film-forming ploymer of monomers including at least a major proportion of vinyl chloride, and (b) a sub-

stantially non-volatile plasticizing material therefor in an amount within the range of at least about ⅓ the weight of said polymer but not in excess of about ½ the weight of said polymer and comprising at least a major proportion of a non-migrating viscous plasticizer resin".

attain them. Schmidt actually serves to illustrate the improvement over prior art achieved by the patent in suit.

■ We find no merit in defendants' contention that the Oace et al. patent fails to meet the requirements of distinctness and particularity prescribed by 35 U.S.C.A. § 112. Defendants' argument in this connection is directed primarily to the reissue claims (Claims 6 to 9 inclusive). But the invention claimed is identical and the reissue merely clarifies without changing the invention or the scope of the original claims. The essential difference between the original and the reissue claims is that the latter make clearer and more obvious the use of a synthesized plasticizer to obtain the same results in the same manner and as the result of the combination of low molecular weight ingredients with high molecular weight ingredients. What would infringe claims 1, 3 and 4 by application of the doctrine of equivalents, responds more literally to claims 6, 7, 8 and 9. And, with respect to both the original and reissue claims, it is proper to refer to the descriptive portions of the specifications to ascertain the intent and meaning of the language employed. Bates v. Coe, 98 U.S. 31, 38, 25 L.Ed. 68. Claims are to be construed in the light of the specifications. Sherbatskoy v. United States Steel Corp., 7 Cir., 287 F.2d 552, 556.

On the issue of infringement the record establishes that in the accused tapes the polyvinyl chloride was plasticized with either (1) a combination of Flexol R–2H, Paraplex G–60 and Dioctyl phthalate; (2) a combination of Flexol R–2H and Paraplex G–60; (3) Paraplex G–50; (4) Flexol R–2H; (5) Admex 761.[3] In the specific and detailed findings made as to each of the five accused tapes the District Court found, in substance, that the plasticizers were used in such proportion to the vinyl chloride, and to each other where more than one of the plasticizers were used, as to fall within the teachings disclosed by the claims and specifications of the plaintiff's patent to be necessary to achieve the balance between low molecular weight plasticizer and high molecular weight plasticizer required to establish permanent equilibrium between the resulting plasticized vinyl backing and the pressure-sensitive adhesive; that Paraplex G–50, Flexol R–2H and Admex 761 could each be used as the single plasticizer ingredient because each was a synthesis containing a requisite proportion of low molecular weight plasticizer material to high molecular weight material; and that the accused tapes are so identical in appearance, utility and physical characteristics as to be indistinguishable by a purchaser from plaintiff's tapes, and were sold in gauges designated "330" and "220" corresponding to plaintiff's products numbered "33" and "22".

It would serve no purpose to attempt to discuss the highly technical evidence in detail. Suffice it to point out that in an accompanying opinion [4] filed with his findings of fact and conclusions of law the learned trial judge observed that the record is replete with the testimony of experts as to the constituent elements of the various plasticizers used in the manufacture of the accused tapes, that inconsistencies and disputes occur, but that the testimony of plaintiff's credible and eminently qualified expert, Dr. Frederic T. Wall, concerning the actual analysis made of the accused tapes must be accorded greater weight than the somewhat vague testimony of the witnesses connected with the firms manufacturing the plasticizers used in defendants' tapes. It was the function of the District Court judge, as the trier of the facts, to judge of the credibility of the witnesses and his determination of factual issues based on the resolution he made of conflicting testimony is not to be disturbed here unless clearly errone-

---

3. With the exception of dioctyl phthalate these are trade names of plasticizer materials.

4. Minnesota Mining & Manufacturing Co. v. Technical Tape Corp., 200 F.Supp. 753, 761.

ous. From our examination of the record we find that there is substantial evidence to support the District Court's conclusion that the charges of infringement are sustained. We are not left with any definite or firm conviction that a mistake has been made. Cf. United States v. United States Gypsum Co., 333 U.S. 364, 394–395, 68 S.Ct. 525, 92 L.Ed. 746.

The substance of defendants' argument is that the proportions of some of the plasticizer materials, or of the ingredients of such materials, used in the accused tapes vary from ratios expressed in the claims and thus afford defendants full exoneration from infringement. Defendants would rigidly limit the teachings of the patent to the proportions expressed as numerical ratios although it is clear from the claims and specifications that these are stated as approximations and as within limitations of greater range. In this connection the Supreme Court has had occasion to observe (Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 607 and 609–610, 70 S.Ct. 854, 94 L.Ed. 1097) that it is customary for infringers to vary somewhat from the exact disclosure of a valuable patent, because "[o]utright and forthright duplication is a dull and very rare type of infringement" and that:

> "Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform.
>
> \*   \*   \*   \*   \*   \*
>
> "A finding of equivalence is a determination of fact. \* \* \* Like any other issue of fact, final determination requires a balancing of credibility, persuasiveness and weight of evidence. It is to be decided by the trial court and that court's decision, under general principles of appellate review, should not be disturbed unless clearly erroneous. Particularly is this so in a field where so much depends upon familiarity with specific scientific problems and principles not usually contained in the general storehouse of knowledge and experience."

■■ The defendants' post trial motion to suspend entry of judgment does not appear in the appendix nor does defendants' brief give any record reference thereto. We will not search the record to locate and appraise the content of the motion. Whitson v. Aurora Iron & Metal Co., 7 Cir., 297 F.2d 106, 111. But from what we glean from statements made in the briefs concerning the motion, and from the references made in the District Court's order denying the same, we conclude that the court did not err in its denial. It appears that the delay was sought to enable defendants to take depositions for the purpose of establishing an "unclean hands" defense based on alleged anti-trust law violations constituting abuse of patent rights. The motion was premised on the return of an indictment against the plaintiff. The record discloses that the defendants had knowledge of the grand jury investigation in which the indictment was returned for some eighteen months prior to the trial of this case. In a pre-trial memorandum they had charged the plaintiff with waging a "war to establish a monopoly over all vinyl plastic tape" and stated that plaintiff's activities were under scrutiny in a "current Federal Grand Jury investigation". Defendants had ample opportunity to secure all necessary discovery to ascertain if a basis existed for raising the issue they belatedly sought to explore some two and one-half years later after a full trial and a decision on the merits. And the indictment returned shortly thereafter is but an accusation —it constitutes no newly discovered evidence of "unclean hands". The situation here is not comparable to that presented in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 and other cases relied upon by defendants but is more akin to that which was found in Leeds & Northrup Co. v. Doble Engineering Co.,

1 Cir., 160 F.2d 750, 751–752, to justify denial of a similar request.

We have considered the basic contested issues presented by defendants' appeal but we have not deemed it necessary to comment on all of the arguments advanced by the defendants in support of their position nor to expand this opinion by analysis of the cases cited in connection with the defendants' contentions. We have, however, in arriving at the disposition we make of the case, considered each of the arguments advanced and the authorities relied upon in support thereof.

We conclude that the District Court did not err in denying the post-trial motion, that its findings of fact on the issues of validity and infringement have substantial support in the record, and that its conclusions of law with respect to those issues are applications of correct legal criteria.

The judgment order of the District Court is affirmed.

Affirmed.