The GLOBE TOOL & ENGINEERING
COMPANY, Plaintiff-Appellant,

v.

RAM TOOL CORPORATION, Defendant-
Appellee.

No. 16448.

United States Court of Appeals
Seventh Circuit.

Nov. 14, 1968.

M. Hudson Rathburn, Curtis F.
Prangley, Mark H. Clayton, Chicago Ill.,
Roger S. Dybvig, Dayton, Ohio, for
plaintiff-appellant.

Ira Milton Jones, Milwaukee, Wis.,
Joe A. Walters, Minneapolis, Minn.,
Robert M. Wolters, Richard Bushnell,
Olson, Trexler, Wolters & Bushnell,
Chicago, Ill., for defendant-appellee.

Before MAJOR, Senior Circuit Judge,
and SWYGERT and FAIRCHILD, Circuit Judges.

MAJOR, Senior Circuit Judge.

This action was brought jointly by Globe Tool & Engineering Company, an Ohio corporation (Globe), and Harry W. Moore (Moore), a resident of Ohio and president of Globe, against Ram Tool Corporation, an Illinois corporation (Ram), charging Ram with infringement of claims 3 and 11 of United States patent No. 2,627,379, issued to Moore on February 3, 1953, on an application filed February 1, 1949 (sometimes called the first Moore patent), and claims 1 to 14, inclusive, of United States patent No. 3,013,737, issued to Moore on December 19, 1961, on an application filed November 15, 1957 (sometimes called the second Moore patent).

At the time the suit was commenced Moore was the owner of the two patents and Globe the exclusive licensee, but prior to trial Moore assigned his entire right, title and interest in and to the two patents to Globe. At the commencement of the trial Moore was dismissed as a party plaintiff.

Globe for many years has been engaged in the development, manufacture and sale of special machinery for manufacturers of electrical equipment. Approximately 30% of its business constitutes the production of so-called "armature winding machines," i. e., machines for winding coils of electrical wire onto a magnetizable structure or core which, when suitably wound and further processed to provide for connection of the coils of the winding to each other and to suitable external circuits, forms the armature or rotor of an electric motor or generator.

Defendant Ram is not a manufacturer of armature winding machines but uses

such machines in manufacturing armatures, and is charged with infringement by reason of its use of an armature winding machine manufactured by Possis Machine Corporation, a relatively new competitor of plaintiff. Possis, although not a party to this action, has assumed its defense.

The trial court, after a rather extensive hearing, announced from the bench that it was inclined to hold invalid the claims in suit, both those of the first and second Moore patents, and suggested that findings of fact and conclusions of law be submitted. On April 12, 1967, the court entered its findings of fact and conclusions of law, in the main as submitted by defendant's counsel. On May 19, 1967, judgment was entered, holding all claims in suit of both patents invalid and void and not infringed by Ram. Presumably the court found non-infringement solely on the basis that the claims in suit were invalid. From the judgment thus entered, the appeal comes to this court.

The following description of the subject matter of the patents involved is taken from plaintiff's brief. The two Moore patents in suit are directed to apparatus known in the art as armature winding machines. More specifically, they are directed to automatic armature winding machines in which the entire winding operation, except for the initial and final steps of placing an unwound armature core in the machine and removing the wound armature after completion of the winding operation, is carried out automatically.

As described by plaintiff's witness Biddison, the type of armature with which the patents in suit are concerned constitutes the rotating part of an electric motor and consists of a substantially cylindrical body formed of magnetizable material such as soft iron, for example, which cylindrical body is provided with a plurality of axially extending slots in its peripheral surface for receiving the electric coils or windings. Each coil or winding consists of a number of turns of conductive wire which are wound into a pair of spaced slots that are disposed substantially opposite each other on the armature body so that the wire extends along one slot, across the end of the armature body, back along the second slot, across the opposite end of the armature body to the starting point and again along the first slot, which winding pattern is repeated until the desired number of turns have been wound into the pair of slots to form a completed coil.

Lengths of wire which respectively extend from the start of the first turn and from the termination of the last turn in the coil are commonly referred to as leads and serve to connect the coils into suitable external electric circuits. Specifically, these leads in the completed motor are electrically connected to circuit-completing devices known as commutators or slip rings which are carried by the armature shaft. In winding armatures, the coils are usually wound from a continuous supply of wire, and the leads are formed during the winding operation as loops extending between successive coils, which loops are later cut to form two leads. These loop portions of the armature winding are referred to in the art as "lead loops."

The first Moore patent is directed to an automatic armature winding machine having correlated and interconnecting means and mechanisms which function to wind a coil of the proper number of turns into a pair of oppositely disposed slots in the armature core, to automatically shift or index the armature core to present successive pairs of slots for winding additional pairs of coils, to form lead loops between the last turn of each completed coil and the initial turn of the next succeeding coil, and to stop the machine when the armature is completely wound.

The second Moore patent is directed to automatic armature winding machines for carrying out substantially the same winding operations as the first Moore patent, but incorporates hydraulic driving and control means that eliminate or minimize the complicated electromechani-

cal relays, clutches, brakes, etc. of the first Moore patent, thus providing improved flexibility, ease and accuracy of control of the winding operation while permitting increased winding speeds and decreased maintenance problems as compared to previously known automatic winding machines.

Defendant on brief here, as it did in the court below, relies heavily upon the 1902 Schulz patent No. 709,179; the 1912 Pike patent No. 1,048,205; the 1921 Wood patent No. 1,375,745, and the 1940 Allen patent No. 2,348,948, in support of its contention, agreed to by the trial court, that the first Moore patent was invalid. The patents to Schulz, Pike and Wood were not cited in the Patent Office during the prosecution of the first Moore patent. The defendant relies upon Allen, No. 2,348,948; the 1951 Biddison patent No. 2,670,145, and the 1943 Vickers patent No. 2,326,184, in support of its contention, agreed to by the trial court, that the claims of the second Moore patent are invalid.

Plaintiff does not seriously question that the court's findings support its conclusions, that is, that the patents in suit were invalid in view of the prior art. Plaintiff does contend that the court's findings are not supported by substantial evidence, are clearly erroneous and should not be accepted by this court. Proceeding on this theory, plaintiff argues the matter here on brief as though this were a trial de novo. In this connection it states:

> "The trial court in the case at bar, by adopting Defendant's proposed findings, accepted blindly the opinion testimony of Defendant's expert witness Kohls and rejected *sub silentio* the more competent testimony of Plaintiff's expert witness Biddison."

We have read all of the testimony as it appears in the appendix submitted by plaintiff and think the criticism directed at the trial judge is unwarranted; in fact, we gather the distinct impression that he was particularly alert to the issues involved and demonstrated a thorough understanding of the great volume of evidence, oral and documentary, which was introduced by the respective parties. It is true he placed greater reliance upon the expert testimony offered by defendant than on that offered by plaintiff. The court specifically found:

> "Defendant's witness Straub was well versed in the coil winding and hydraulic arts and defendant's witness Erskine was highly skilled in the hydraulics art. Defendant's witness Kohls was well versed in patent matters. The testimony of defendant's witnesses was straightforward and credible."

Claim 11 of the first Moore patent is broader than claim 3, and it is asserted to be typical of the two claims. Claim 11 is as follows:

> "A coil winding machine for winding a slotted armature, said coil winding machine including means for holding the slotted armature in winding position, means for laying the wire used in forming the windings in the slots of the armature, means for causing a relative rotary movement between the means for holding the armature and the means for laying the wire to cause the wire to be laid into the slots to form the armature windings, a pawl member, and means driven in synchronism with the means for laying the wire for effecting a relative movement between the wire laying means and the pawl member so as to cause the path of the wire to overlap the pawl member to form a loop."

The court made the following finding, which is not in dispute:

> "The two patents in suit relate to alleged improvements in machines for winding coils on slotted cores to form armatures for electric motors and similar dynamo-electric machines. The first Moore patent relates to alleged improvements in mechanism for forming lead loops during the winding of the coils, and the second Moore patent relates to a coil winding machine having a hydraulic drive and control therefor."

Referring to the Schulz patent, the court found:

"The 1902 patent to Schulz, No. 709,179, is the earliest known patent for an automatic winding machine by which the armature coils may be wound with lead loops between the coils."

The court further found:

"The lead loop-forming mechanism disclosed in the prior Schulz patent No. 709,179 is identical in function and principle to that disclosed and claimed in the first Moore patent, and responds fully to each and every element of claim 11 of the first Moore patent.

"Loop-forming fingers or hooks in an armature coil winding machine that are movable into the path of the wire being wound on the armature core are also disclosed in the 1912 Pike patent No. 1,048,205 and in the 1921 Wood patent No. 1,375,745. The lead loop-forming mechanism of the last mentioned Wood patent is the functional and structural equivalent of that defined by claims 3 and 11 of the first Moore patent."

These findings are of critical importance because plaintiff's principal contention is that the first Moore patent provides for "automatically forming lead loops between successive coils," which disclosure distinguishes Moore from Schulz, Pike and Wood. On this point plaintiff relies upon the testimony of its general manager, Biddison, an engineer. After describing in great detail the patents in suit as well as Schulz, Pike and Wood, Biddison testified:

"Q. Now, Mr. Biddison, could you, as an engineer skilled in the art of armature winding, using only the mechanisms disclosed in the Schulz patent, with those mechanisms operating as therein described, construct a machine which would automatically wind usable armatures forming leads on the coils?

A. I would not be able to, using the teachings of the patent and the mechanism described therein, to produce a usable armature on either the Schulz, Pike or Wood machine."

On the other hand, Melvin J. Straub, vice president and director of engineering for the Possis Machine Corporation, a witness for the defendant, also testified at length concerning the patents under discussion. As to Schulz he testified:

"Q. * * * Have you made a study of the specification and of the drawings of the Schulz patent?

A. Yes, I have.

Q. What have you to say as to whether or not from such study you, as one skilled in this art, could build a workable machine using the information of the specification and drawings, and that such machine would wind armatures having loops between—at the end of each coil?

A. I am reasonably confident again, as I believe an engineer should be, that I could build a machine from this to wind armatures."

Concerning the Wood patent he testified:

"Q. Have you studied the specification and drawings of the Wood machine—of the Wood patent?

A. Yes, I have.

Q. And would you say that you have an understandable knowledge of its operation?

A. Yes.

Q. What have you to say from such study as to whether or not you, as one skilled in this particular art, could build a workable machine using the information contained in the specification and drawings of the Wood patent?

A. From the Wood patent I would be as confident as an engineer probably ever should be, that I could build a machine from this disclosure to wind armatures.

Q. And what have you to say as to whether these armatures would have lead loops at the end of each coil?

A. Yes, there would be a loop from each coil."

Defendant on brief states:

"The Schulz patent meets every element of claim 11 of the first Moore patent, both in terms and in spirit. In fact, claim 11 of the first Moore patent calls for the same structure as is defined by Claim 13 of the Schulz patent, so that if Schulz had been the later patentee, the invention defined by his claim 13 could not have been made without infringing Moore's claim 11."

Plaintiff in its reply brief responds to this argument:

"It should be noted, however, that Defendant's reference to 'the invention defined by his [Schulz] claim 13' is wholly ambiguous and without meaning, since it is the disclosure of the Schulz patent, not the claims of that patent, that determines anticipation * * *."

▆ No authority is cited in support of this point, and we think it is of dubious propriety. The claims are an essential part of the patent and, as such, must be taken into consideration in making a determination of what remains in the public domain.

▆ Without further discussion, we conclude that there is evidence which amply supports the findings above quoted. As this court stated in Minnesota Mining and Manufacturing Co. v. Technical Tape Corp., 7 Cir., 309 F.2d 55, 58:

"It was the function of the District Court judge, as the trier of the facts, to judge of the credibility of the witnesses, and his determination of factual issues based on the resolution he made of conflicting testimony is not to be disturbed here unless clearly erroneous."

Some general principles which plaintiff attempts to call to its aid carry little if any weight under the factual situation presented. For instance, the presumption of validity is of no benefit in view of the patents to Schulz, Pike and Wood, which were not cited in the Patent Office. This court stated in Skirow v. Roberts Colonial House, Inc., 7 Cir., 361 F.2d 388, 390:

"While a presumption of validity arises from a grant of a patent by the patent office, there is no presumption of validity as against prior art not before the patent office." (Citing cases.)

Also, there is no proof upon which to base plaintiff's argument of commercial success. Plaintiff's expert, Biddison, testified that only one acceptable machine was ever manufactured in accordance with the teaching of the first Moore patent. Instead, plaintiff commenced the manufacture and sale of its armature winding machine, designated as Model 11-DF, and during 1955 it sold eleven of them to the Sunbeam Company of Chicago.

In this connection it is pertinent to note that Otto F. Steinke, an employee of plaintiff for twenty years, testified as to the machine purportedly made in accordance with the first Moore patent:

"This is the original machine after it had been rebuilt three times.

Q. And did someone design the machine or did you just start out building, or how did you come to start working on this machine?

A. The basic machine was designed by Allen.

Q. Is this Ernest C. Allen you are referring to?

A. Yes."

As to the second Moore patent, the court found:

"The second Moore patent discloses and claims an armature coil winding machine which is in all material respects identical with armature coil winding machines manufactured by Globe more than a year before the second Moore patent was applied for, and disclosed in the prior patents to Allen No. 2,348,948 and Biddison No. 2,670,-145, except that in the machine of the second Moore patent the electromechanical drive unit and control mechanism of the prior machines is replaced

by a hydraulic drive and control unit in which the power input to the hydraulic motor of the unit is controlled from its output."

The court further found:

"The main difference between the 11DF machines sold to Sunbeam in 1955 and the hydraulically driven machine of the second Moore patent was in their respective drives; in the former an electro-mechanical drive with a variable speed transmission and a clutch and brake was used to drive the fliers, while the latter employed a variable speed hydraulic drive."

Plaintiff on brief states:

"Stated as broadly as it is, Plaintiff has no quarrel with Finding 29, since it is conceded that the invention of the second Moore patent is the provision of a hydraulically operated automatic armature winding machine that will carry out all of the functions of the Globe 11–DF machine in a more facile manner while permitting higher winding speeds and materially reducing maintenance problems."

Plaintiff's expert witness, Biddison, testified:

"Q. * * * Is it not true that any good draftsman or engineer could direct the removal of the electro-mechanical transmission of this machine and substitute the hydraulic drive transmission in its place by connecting the electrically operated solenoids with the means that initiated the operation of the electric switches of the electromechanical transmission?

A. I am not sure I could vouch for any good draftsman.

Q. How about yourself? You are a good engineer.

A. Thank you. I would feel I could do this, yes."

Shively, an engineer and witness for the plaintiff, testified that a machine made in accordance with the second Moore patent differed from the 11-DF machine in that the former was hydraulic

while the latter was a mechanically driven machine. He further testified:

"Q. Did you, in designing the hydraulic machine, did you use the basic structure of the mechanical machine and simply adapt the hydraulic drive to it?

* * * * * *

A. I'd say yes, sir.

* * * * * *

Q. How did you go about building the prototype? Did you take mainly or part from the other machine and then proceed from there?

A. Most of the parts were new and we simply made use of the previous experience and knowledge of where we wanted the improvements made, in both design and in mechanical features of the machine."

As to the first Moore patent, the court found:

" * * * one skilled in the art would be able to build a workable machine to wind commercially acceptable armatures having a lead loop at the end of each coil."

As to the second Moore patent, it found:

"These 11DF machines were built in accordance with Biddison patent No. 2,670,145. They performed the same sequence of operations that is performed by the hydraulically driven machine of the second Moore patent, and could wind many of the same types of armatures that are wound by the hydraulically driven machine."

We see no reason to discuss further the evidence relied upon by defendant in support of the findings upon which the court's judgment of invalidity as to both the first and second Moore patents was based. In our opinion, the evidence amply supports the findings, and the judgment appealed from must be affirmed.

 We should not conclude, however, without mentioning defendant's motion filed in this court requesting an award of reasonable attorney fees. Defendant bases its request upon Title 35 U.S.C.A. Sec. 285, which provides, "The court in

exceptional cases may award reasonable attorney fees to the prevailing party." As far as we can ascertain from the record, no such request was made in the trial court. Assuming, without deciding, that the statutory provision relied upon authorizes this court to allow the award sought, we are of the view and so hold that no showing is made which justifies such award. The motion is denied.

For the reasons stated, the judgment appealed from is

Affirmed.

SWYGERT, Circuit Judge, concurs in the result.